**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NIKISH SOFTWARE CORPORATION and KISHIN BHARWANI, | ) | CASE NO. 1:07-cv-00358-DFH-TAB |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MANATRON, INCORPORATED, | ) | |
| | ) | |
| Defendant, | ) | |
| _____ | ) | |
| | ) | |
| MANATRON, INCORPORATED, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIKISH SOFTWARE CORPORATION and KISHIN BHARWANI, | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

**COUNTERCLAIM INJUNCTIVE RELIEF AND DAMAGES**

Defendant and Counterclaim Plaintiff, Manatron, Incorporated ("Manatron"), by counsel, for its Counterclaim against Plaintiffs/Counterclaim Defendants Nikish Software Corporation and Kishin Bharwani (hereinafter collectively referred to as "Nikish") states:

**JURISDICTION AND VENUE**

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332 (Diversity Jurisdiction) because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs.  This Court has jurisdiction over the pendent state-law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction).  Furthermore, the

counterclaims asserted herein are so related to the claims asserted in Nikish's Complaint that pursuant to 28 U.S.C. § 1331, they form part of the same case or controversy.

2.      This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(a) because Nikish does business in the Southern District of Indiana, because a substantial portion of the events giving rise to this action originated in the Southern District of Indiana, and because Nikish has committed acts causing injury or damage in the Southern District of Indiana.

### THE PARTIES

3.      Manatron is a Michigan corporation whose principal office is located at 510 E. Milham Avenue, Portage, Michigan 49002.

4.      Since 1969, Manatron has been a leading provider of enterprise-level, integrated property software systems and services for state and local government and has a rich history in property recording, tax assessment, billing and collection.  Manatron's software has helped government jurisdictions collect over one trillion dollars in revenue.

5.      Manatron provides software and services to 80 counties in Indiana, including Bartholomew County, Indiana.  Indiana is Manatron's largest core market and therefore contains one of Manatron's most substantial customer bases.

6.      Counterclaim Defendant Nikish Software Corporation ("Nikish") is a New York corporation with offices located at 145 Commack Road, Commack, New York 11725.  Nikish is in the business of developing software for both private and public entities.

7.      Counterclaim Defendant Kishin Bharwani ("Bharwani") is the President and Chief Executive Officer of Nikish Software Corporation and is a resident of Newport, New York.

## MANATRON'S BUSINESS

8.      Manatron has developed certain property appraisal and property tax software, which it licenses under the following names:  MVP, CAMA, MVP Tax, Pro Val and SMDA 2000.  This software contains proprietary source codes consisting of confidential trade secret information.

9.      Manatron's source codes, particularly its MVP source code is confidential and proprietary information developed through the expenditure of a considerable amount of time and effort and large sums of money and is not known in the industry.  The MVP source code and other confidential and proprietary trade secret information are valuable to Manatron because they derive economic value from the fact that they are not publicly available and such information would give any Manatron competitor, including Nikish, who wrongfully acquired such information an illegal and unfair competitive advantage.

10.      Manatron takes reasonable steps to protect its confidential and proprietary information including the use of written confidentiality agreements, a written corporate compliance manual, training sessions, limited access to computer systems, networks and facilities, password protected computers and internal regulation of the dissemination of information.

11.      In the course of its business, Manatron may provide its proprietary source code to other companies for the purpose of having the software developed.  In such situations, the consulting/development agreements for Manatron's proprietary software are subject to a Confidentiality/Nondisclosure Agreement which continues through termination of the underlying software development agreement.

12.      The MVP source code was developed for, compliant with and deployed in more than ninety (90) jurisdictions in Indiana and Ohio.

## CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES

13.     In 2001 Nikish and Manatron entered into the "Software Development and Professional Services Agreement" for the development of Manatron's MVP software source code for a property appraisal and tax system in Dauphin County, Pennsylvania (hereinafter "2001 Pa. Software Development Agreement" attached hereto as Ex. A).

14.     Section 11.1, Nondisclosure, of the 2001 Pa. Software Development Agreement provides:

> Except as necessary to perform the Services and except as otherwise expressly permitted under this Agreement, Nikish shall maintain the confidentiality of, and shall not disclose or use the Confidential Information.  As used in this agreement, the term "Confidential Information" means and includes the terms of this Agreement, the Base Software, the Tools, Deliverables, and any information or materials at any time furnished to Nikish by Manatron or any of its affiliates or to which Nikish is exposed during the course of performance of Services, concerning the business, operations or activities of Manatron and its affiliates, including without limitation, information concerning present or proposed products, product developments, plans, specifications, drawings, software, strategies, personnel, supply usage, facilities locations, business goals, finances, know-how, sales customers, and marketing or sales techniques.

15.     Under the Agreement, Nikish agreed that the ownership of any software and source codes "shall be exclusively owned by Manatron" and "Manatron shall exclusively own all Proprietary Rights embodied in or pertaining to the Deliverables and any portions of the Deliverables made or conceived by Nikish."

16.     Nikish further agreed that "Manatron shall retain full and exclusive ownership of all materials and works provided by Manatron to Nikish under this Agreement, including all Proprietary Rights in the materials and works."

17.     Nikish further agreed to "not use any Confidential Information in any way to compete with Manatron, either directly or indirectly." The above confidentiality and nondisclosure obligations survived indefinitely after termination of the Agreement.

18.     Section 15.5, Return of Materials, of the Agreement provides that upon termination of the Agreement, "Nikish shall deliver to Manatron all Confidential Information and other materials relating to Manatron's business, including, without limitation, all source code, . . . and documents. . . Nikish shall not retain any photocopies, facsimiles, tapes or other copies of any of the materials or Confidential Information."

19.     Under Section 11.5, Nikish was allowed to retain copies of programming tools and source code that it develops "provided, however, that Nikish shall not (i) use the Tools to develop any software for federal, state and local governments; (ii) use the Tools to develop any product or service that competes with goods or services provided by Manatron."

20.     Nikish failed to complete all requirements of the 2001 Pa. Software Development Agreement and left some of the source code undeveloped.

21.     On April 15, 2003, Nikish and Manatron entered into a "Consulting and Noncompetition Agreement" for the development of software for a property appraisal and tax system in Baltimore, Maryland (hereinafter "2003 Baltimore Agreement").

22.     Manatron's relationship with Nikish began to decline in late 2005 and early 2006. Manatron had performance issues with Nikish on the Dauphin County and Baltimore projects that resulted in client disputes and Bharwani and Nikish were a substantial reason for those disputes. Nikish failed to property complete its obligations on the projects.

23.     On October 14, 2005, Manatron and Nikish entered into a "Settlement, Release, and Business Services Agreement" (hereinafter "the Settlement Agreement") to discharge the

parties from the dispute over the Baltimore project.  Although the Settlement Agreement gave Nikish the right to engage in business with "any person or entity", Nikish was still bound by a duty of non-disclosure and non-competition with respect to Manatron's confidential and proprietary information, including MVP source code.

24.     Under the terms of the 2001 Pa. Software Development Agreement and the 2003 Baltimore Agreement, Bharwani and Nikish had been granted access to Manatron's MVP software source code for the purpose of modifying it to be used in those jurisdictions.  Nikish agreed that Manatron retained ownership of the MVP source code and that Nikish would not disclose the proprietary source code to third parties, or use the source code to compete with Manatron.

25.     At some point in 2005, Nikish began developing a web-based full-service tax system for the State of Indiana local government service.  This software is known as RMS 2.0. Upon information and belief, this program uses the same C# programming language and web-based architecture that Manatron hired Nikish to develop with respect to Manatron's MVP source code from Indiana.

26.     From March 2006 through January 2007, Nikish continued to provide services to Dauphin County, PA, pursuant to the 2001 Pa. Software Development Agreement.

**EVENTS GIVING RISE TO THIS ACTION**

27.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 26.

28.     On or about January 2, 2007, Bharwani resigned from his duties with respect to the Dauphin county, PA project and walked off the job without explanation or justifiable cause. Bharwani did not return any of the confidential and proprietary information as required by the 2001 Pa. Software Development Agreement.

29.     Due to Bharwani's shirking of his duties and obligations under the 2001 Pa. Software Development Agreement, key portions of the code remain undeveloped, while other portions that were developed, had severe defects in which Manatron has accrued costs in trying to repair.

30.     Prior to Bharwani abandoning the Dauphin County project, Manatron became aware that Nikish began marketing the RMS 2.0 to Indiana counties including Bartholomew County.  Prior to 2006, Bharwani and Nikish had never marketed, developed, or deployed a solution to Indiana clients.

31.     In August 2006, less than six (6) months after he reduced his obligations to Manatron, Bharwani responded to a Request for Proposal (RFP) for Vigo County, Indiana issued on or about July 24, 2006.  Nikish's response to the Vigo County RFP offered a Tax and Billing Collection system -- the RMS 2.0 product.

32.     Nikish represented in the response to RFP that the RMS 2.0 was complaint with Indiana requirements and that it was developed and owned by Nikish.

33.     Specifically, there were numerous representations made in the RFP that concerned Manatron.

    (a)     The response to the Vigo County RFP made material misrepresentations in regards to prior project work for Manatron in Dauphin County and the City of Baltimore. The response mentioned that Nikish had done work in Dauphin County and inferred that Dauphin County was Nikish's client

    (b)     The RMS 2.0 used naming conventions from the Baltimore project.

    (c)     The project manager that Bharwani proposed using was a retired Manatron employee whose only experience was with Manatron's Indiana and Ohio MVP products.

    (d)     Nikish also presented an unusually quick delivery turnaround time that was difficult to justify for a purportedly new, large-scale software product, such as the RMS 2.0, that Nikish purportedly developed from scratch.

34.     Given the quick delivery turnaround time provided in the response to RFP, Manatron's knowledge of Nikish's operating structure and performance ability, the use of naming conventions, the use of former Manatron personnel intimately familiar with the MVP code, and Nikish's possession of the MVP code through its business dealings with Manatron, it was clear to Manatron that Nikish's RMS 2.0 was a derivative work of Manatron's MVP source code.

35.     Upon information and belief, the RMS 2.0 software is not compliant under Indiana law, as required by 50 I.A.C. 23.

36.     On or about November 2006, Manatron decided to send a letter to its Indiana clients stating its concerns about the RMS 2.0.  Manatron's Indiana clients were not aware of its business relationship with Nikish, nor of Bharwani's possession of the MVP source code deployed in their jurisdiction.

37.     Since the November 2006 letter was distributed, two Indiana counties have signed contracts with Nikish to replace the Manatron MVP system.  These counties are Clinton County and Owen County.

## CAUSES OF ACTION

### Count I

### Misappropriation of Trade Secrets
### (Indiana Uniform Trade Secrets Act, Ind. Code 24-2-3-1 et. seq.)

38.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 37.

39.     The proprietary business information, source codes and customer information Manatron entrusted to Nikish constitute trade secrets because Manatron derives independent economic value from that information, such information is not readily available or ascertainable

by proper means by other persons who can obtain economic value from its disclosure or use, and because the confidential information is the subject of reasonable efforts to maintain its secrecy.

40.     Pursuant to its business relationship with Manatron under the 2001 Pa. Software Development Agreement and the 2003 Baltimore Agreement, Nikish had access to Manatron's Confidential information, specifically its MVP source code.  Manatron entrusted Nikish with its proprietary trade secret and confidential information in performance of Nikish's duties to develop the software pursuant to the respective Agreements.

41.     Nikish and Bharwani knew the information was confidential and that it was considered to comprise trade secrets of Manatron, knew that the MVP source code was a valuable commercial asset of Manatron's, and knew that Manatron had expended countless time, effort, and money in developing its MVP source code and other confidential and trade secret information.

42.     The Agreements signed by Nikish contained Confidentiality and Non-disclosure provisions.  The Agreements also prohibited Nikish from using any copies of any materials, that resulted from its work under the Agreements, to develop software programs for federal, state, and local governments, or to otherwise use such materials to directly compete with goods or services provided by Manatron.

43.     Nikish misappropriated the MVP source code it had access to pursuant to the 2001 Pa. Software Development Agreement and the 2003 Baltimore Agreement in violation of the Agreements and without Manatron's consent.

44.     The RMS 2.0 provides the same services as Manatron's MVP source code and upon information and belief, this program uses the same C# programming language and web-

based architecture that Manatron hired Nikish to develop with respect to Manatron's MVP source code from Indiana.

45.     The Agreements obligated Nikish to use the MVP source code only on behalf of Manatron and for no other purpose and further established that any work that Nikish created by using the source code is the property of Manatron.   Nikish developed the RMS 2.0 using Manatron's confidential trade secret information, Manatron is the rightful owner of the RMS 2.0 as it was derived using Manatron's proprietary MVP source code.

46.     On January 16, 2007, Manatron requested return of all deliverables, source codes, including a copy of the Manatron MVP application source code used in Dauphin County, and other property in Bharwani's possession pursuant to the terms of the Agreement.  Nikish has not complied with this request.

47.     Manatron has a right to receive the deliverables, documentation and other materials that it owns and Nikish has no right to hold the documents hostage.  The Agreements required the return of all deliverables upon termination of the Agreement.

48.     Nikish knowingly, willfully, and deliberately misappropriated Manatron's MVP source code, trade secrets and confidential information with full knowledge of the secret and confidential nature of said information and of its commercial value.

49.     Nikish has been, and will continue to be, unjustly enriched by its misappropriation of Manatron's trade secrets and confidential information.  Nikish will continue to use or threaten to use its RMS 2.0 product (an illegal derivative of Manatron's MVP source code), divulge, inevitably disclose, acquire and/or otherwise misappropriate Manatron's trade secrets and confidential information.

50.     Two Indiana counties, Clinton and Owen, have already signed contracts with Nikish to replace the Manatron MVP system with the RMS 2.0 product.  Upon information and belief, the RMS 2.0 product is not compliant with applicable Indiana software requirements law.

51.     As a result of Nikish and Bharwani's actions, Manatron has been irreparably harmed and damaged.

<u>**Count II**</u>

<u>**Breach of Contract**</u>

52.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 51.

53.     Nikish and Bharwani were subject to the 2001 Pa. Software Development Agreement which required Nikish to develop Manatron's MVP source code for use in a property tax and appraisal system in Dauphin county, PA, to protect the confidentiality of Manatron's confidential information and trade secrets entrusted to Nikish pursuant to the Agreement, and not to use them for Nikish's or Bharwani's personal/business gain.

54.     This Agreement obligated and continues to obligate Nikish and Bharwani to hold Manatron's confidential and proprietary information in trust and not to disclose this information or use this information to develop software programs to compete with Manatron.

55.     The Agreements are valid and enforceable contracts.   The confidentiality requirements, non-disclosure and non-competition clauses, and reasonable efforts clauses are reasonable and necessary to protect Manatron's legitimate protectable interests in its proprietary information and relationships.

56.     Manatron has fully performed all of its obligations under the Agreements.

57.     Nikish has breached the Agreements by:

(a)      Bharwani walking off the Dauphin county job site leaving some of the source code undeveloped.  Key portions of the code remain undeveloped, while other portions that were developed, have severe defects for which Manatron has incurred damages in attempting to repair;

(b)      Nikish failing to return confidential and proprietary Materials and other Deliverables, including the MVP application source code, as required by the Agreement. Nikish did not have a right to terminate unless Manatron was in default or ceased doing business in the normal course.  Neither of those conditions were present;

(c)      Nikish using confidential and proprietary Materials and Deliverables to develop a software program, the RMS 2.0 (an illegal derivative of Manatron's MVP source code), which Nikish marketed to state and local governments in direct competition with Manatron, and in violation of the 2001 Pa. Software Development Agreement;

(d)      Nikish using Manatron's confidential information to the detriment of Manatron and/or to the benefit of Nikish;

(e)      Usurping business/sales opportunities from Manatron; and

(f)      Utilizing Manatron's confidential information for personal/corporate gain.

58.      Because of Nikish's breach, Manatron has assumed software support duties in-house and in order to support its product, it needs the requested confidential deliverables and documentation immediately or it will continue to suffer damages.

59.      As a result of Nikish's breach of the Agreements, Manatron has been damaged.

## Count III

## Unfair Competition

60.      Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 59.

61.      Upon information and belief, Nikish is recruiting Manatron employees who have knowledge of Manatron's confidential and trade secret information and is inducing those employees to breach their agreements and to wrongfully use and disclose Manatron's confidential and trade secret information to Nikish for the commercial benefit of and exploitation by Nikish.

62.     Nikish has misappropriated Manatron's trade secrets and confidential information to develop the RMS 2.0 product.  It is also marketing and has sold this product to current and potential customers of Manatron, in direct violation of the Agreements.

63.     Nikish willfully took the foregoing acts to gain an unfair competitive advantage over Manatron.  Nikish was fully aware of its wrongful conduct and intended to cause harm to Manatron and in the process benefit itself.

64.     Nikish is unfairly competing in the marketplace and took these actions while being entrusted with Manatron's confidential and proprietary information.

65.     As a result of Nikish's actions, Manatron has been damaged.

### Count IV

### Common Law Copyright Infringement

66.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 65.

67.     Manatron is the owner of certain property appraisal and property tax software, which includes the MVP application source code.  Manatron has been the continuous owner in all exclusive rights to the source code, including the right to the license, sale, reproduction and distribution of the source code.

68.     Nikish, without permission or consent of Manatron, has used the MVP source code and other confidential and proprietary information, to create a derivative work -- the RMS 2.0.  Nikish continues to use, copy, and reproduce the MVP source code without Manatron's permission or consent.

69.     Through Nikish's continuous and ongoing acts of copying and reproducing the MVP source code and other confidential and proprietary information, Nikish has violated

Manatron's exclusive ownership rights to reproduce the MVP source code, to prepare derivative programs based on the MVP source code, and to distribute copies of the source code.

70.     Nikish's acts have been willful, intentional, and in disregard of and with indifference to the ownership rights of Manatron and constitute infringement of Manatron's copyright interests.

71.     As a result of Nikish's infringing actions, Manatron has been damaged.

## Count V

### Breach of Fiduciary Duty/Confidentiality

72.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 71.

73.     By virtue of its business/contractual relationship of confidentiality with Manatron, Nikish stood in a fiduciary relationship with Manatron.  Nikish was entrusted with Manatron's MVP application source code and was compensated by Manatron to work on behalf of Manatron's best interest.

74.     As a fiduciary, Nikish was required to act with the utmost good faith and fidelity toward Manatron and as such, was prohibited from actively exploiting its business relationship with Manatron to develop its RMS 2.0 product for its own personal benefit and hindering the ability of Manatron to continue to do business in the market.

75.     Nikish breached its fiduciary duty to Manatron by among other things:

(a)     Competing with Manatron by misappropriating Manatron's confidential and proprietary information to develop the RMS 2.0 product to directly compete with Manatron and in direct violation of the terms of confidentiality;

(b)     Using Manatron's confidential information to the detriment of Manatron and/or the benefit of Nikish;

(c)     Soliciting Manatron's current and potential customer base with a misappropriated illegal derivative copy of the MPV source code - - the RMS 2.0 product;

14

(d)      Utilizing Manatron's confidential and proprietary information to facilitate a lucrative revenue stream for Nikish vis a vis the RMS 2.0 product;

(e)      Usurping corporate business/sales opportunities of Manatron in the Indiana market;

(f)      Utilizing Manatron's resources for personal and/or corporate gain; and

(g)      Failing to inform Manatron of events or actions against the company's interests.

76.      As a result of these breaches, Manatron has been damaged.

## Count VI

## Breach of Duty of Good Faith and Fair Dealing

77.      Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 76.

78.      In 2001 Nikish entered into the 2001 Pa. Software Development Agreement.

79.      Nikish had an implied duty of good faith and fair dealing with respect to the Agreement and any amendments thereto.

80.      Pursuant to that Agreement, Nikish and Bharwani agreed to "use commercially reasonable efforts" to develop the software program, maintain confidentiality of Manatron's confidential and proprietary information, to return confidential information upon termination of the Agreement, and not to use the confidential information to develop software programs that would directly compete with Manatron.

81.      Nikish and Bharwani breached their duty of good faith and fair dealing by among other things:

(a)      Bharwani walking off the job site prior to completion of the Dauphin county project, and leaving software source codes undeveloped;

(b)      Developing the RMS 2.0 product, an illegal derivative of Manatron's MVP source code, during the pendency of its contractual relationship with Manatron;

(c)      Failing to return confidential Materials and Deliverables upon termination of the Agreement; and

(d)      Soliciting and responding to the Vigo County RFP in direct competition with Manatron in violation of the Agreements.

82.      As a result of these breaches, Manatron has been damaged.

### Count VII

### Tortious Interference with Contractual Relationships or Business Expectancy

83.      Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 82.

84.      Nikish had knowledge of Manatron's contracts and relationships with certain customers/counties in Indiana to provide property tax and appraisal software services and Manatron's expectancy that these customers would continue to utilize Manatron's products and services.

85.      Manatron had reasonably come to expect that its customers would remain its customers in that each had been a customer for many years and Manatron had invested substantial resources in maintaining the relationships.

86.      Despite having knowledge of the continuing obligations and expectancies, Nikish interfered with Manatron's contracts, or its business expectancies, by utilizing or disclosing Manatron's confidential and proprietary information to develop the RMS 2.0, which it then marketed and sold to Manatron's customer base, usurping sales opportunities from Manatron, and using Manatron's good will and confidential information to generate revenue for Nikish.

87.      As a result of any of Nikish's actions, Manatron has been damaged.

## Count VIII

## Unjust Enrichment

88.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 87.

89.     Nikish and Bharwani have enjoyed valuable benefits as a result of their business relationship and access to Manatron's confidential and proprietary information.

90.     Benefits received by Nikish through the actions alleged herein were obtained improperly and were not in exchange for proper consideration or through the time and effort of Nikish.

91.     As a direct and proximate result of Nikish's unjust enrichment, Manatron has been damaged and Manatron is entitled to recover its damages to be proven at trial.

## Count IX

## Deception (Ind. Code 35-43-5-3)

92.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 91.

93.     Nikish knowingly and/or intentionally misapplied and misappropriated Manatron's confidential and proprietary information, which Manatron entrusted to Nikish through their Agreements for development of Manatron's MVP source code.

94.     Nikish knew that this action was unlawful and involved a risk of loss or detriment to Manatron.

95.     Nikish, with the intent to defraud, misrepresented the source and quality of the RMS 2.0 product as its own, knowing that the RMS 2.0 is an illegal derivative of Manatron's MVP source code.

96.     As a result of Nikish's deceptive acts with respect to Manatron's confidential and proprietary information, Manatron has been damaged and is entitled to actual damages, treble damages, costs and attorney's fees pursuant to the Indiana Crime Victim's Act, Ind. Code §34-24-3-1.

## Count X

## Conversion (Ind. Code 35-43-4-3)

97.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 96.

98.     Nikish and Bharwani knowingly and/or intentionally exerted unauthorized control over the property of Manatron.

99.     Nikish used Manatron's confidential and proprietary information, namely its MVP source code, to create an illegal derivative copy -- the RMS 2.0 product.  This was done without Manatron's consent.

100.     Nikish knowingly and/or intentionally exerted unauthorized control over the good will developed by Manatron.

101.     As a result of Nikish's conversion of Manatron's confidential and proprietary information, Manatron has been damaged and is entitled to actual damages, treble damages, costs and attorney's fees pursuant to the Indiana Crime Victim's Act, Ind. Code §34-24-3-1.

## PRAYER FOR RELIEF

WHEREFORE, Manatron prays for the following relief:

A.     That Nikish and Bharwani, and each of their agents, servants, employees, attorneys, and all others acting in active concert or participation with any of them be permanently enjoined and restrained from:

1.      further use and/or disclosure of Manatron's trade secrets and confidential information;

2.      doing any act or thing in breach of the confidentiality, non-disclosure and non-competition agreements between them and Manatron, or between Manatron and its current employees, including providing, soliciting or selling products or services to any Manatron customer which has conducted business with Manatron since 2001;

3.      inducing any breach of Manatron's employee confidentiality agreements with its employees;

4.      hiring Manatron's employees having knowledge of Manatron's confidential and trade secret information for the purpose of obtaining further information or further competing unfairly with Manatron; and

5.      doing any other act or thing calculated or likely to unfairly compete with Manatron.

B.      Nikish be ordered to deliver up for inspection and/or destruction all materials embodying Manatron's trade secrets and confidential information.

C.      Nikish be required to deposit in trust for Manatron, all profits wrongfully derived as a result of their breach of confidential relationship, misappropriation of trade secrets, breach of contract, interference with contract, and unfair competition.

D.      Manatron to be awarded compensatory, punitive and/or exemplary damages.

E.      Manatron be awarded damages for Nikish's willful or malicious conduct.

F.      That Nikish disgorge all monies, paid to them during the contractual period in which they were breaching their fiduciary duty to Manatron.

G.      That Manatron be paid all amounts by which Nikish was unjustly enriched.

H.     That Manatron be paid a reasonable royalty for Nikish's misappropriation.

I.     That Manatron be compensated for the profits Nikish has received from the RMS 2.0 product and that Nikish be ordered to account for all sales and services provided with the RMS 2.0 product, and since 2001, all activities conducted by Nikish, all Manatron's resources used for Nikish's purposes, and all monies received by Nikish.

J.     That Manatron be awarded attorney's fees and costs of this action.

K.     That Manatron be awarded such other and further relief as the Court deems equitable and just.

Respectfully submitted,

LOCKE REYNOLDS LLP

By: */s/ James Dimos*
    James Dimos, #11178-49
    Joel E. Tragesser, #21414-29
    Richelle M. Harris, #26401-49

    Attorneys for Defendant,
    Manatron, Incorporated

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2008, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

J. Lee McNeely
Brady J. Rife
MCNEELY STEPHENSON THOPY &
HARROLD
jlmcneely@msth.com
bjrife@msth.com

/s/ James Dimos
James Dimos

LOCKE REYNOLDS LLP
201 North Illinois Street, Suite 1000
P.O. Box 44961
Indianapolis, IN  46244-0961
Phone: 317-237-3800
Fax: 317-237-3900
jdimos@locke.com
jtragesser@locke.com
rharris@locke.com

900997_1