UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NIKISH SOFTWARE CORPORATION and KISHIN BHARWANI, | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 1 :07-cv-00358-DFH-TAB |
| v. | ) ) | |
| MANATRON, INCORPORATED, | ) ) | |
| Defendant, | ) | |
| _____ | ) | |
| | ) | |
| MANATRON, INCORPORATED, | ) ) | |
| Counterclaimant, | ) ) | |
| v. | ) ) | |
| NIKISH SOFTWARE CORPORATION and KISHIN BHARWANI, | ) ) ) | |
| Counterclaim Defendants. | ) ) | |
| _____ | ) | |

**ANSWER TO DEFENDANT AND COUNTERCLAIMANT MANATRON,
INCORPORATED'S COUNTERCLAIM [FOR] INJUNCTIVE RELIEF AND
DAMAGES
WITH AFFIRMATIVE DEFENSES**

Nikish Software Corporation and Kishin Bharwani (hereinafter collectively referred to as

"Nikish") answer:

**JURISDICTION AND VENUE**

1.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 (Diversity

Jurisdiction) because the parties are citizens of different states and the matter in controversy

exceeds $75,000.00, excluding interest and costs. This Court has jurisdiction over the pendent state-law claims pursuant to 28 U.S.C. § 1367(a) (Supplemental Jurisdiction). Furthermore, the counterclaims asserted herein are so related to the claims asserted in Nikish's Complaint that pursuant to 28 U.S.C. § 1331, they form part of the same case or controversy.

ANSWER:

Admit only that the amount in controversy for the primary claims originally asserted by Nikish exceed $75,000.  Nikish admits the remainder of the allegations in paragraph 1.


2.      This Court is the proper venue for this action pursuant to 28 U.S.C. § 139 1(a) because Nikish does business in the Southern District of Indiana, because a substantial portion of the events giving rise to this action originated in the Southern District of Indiana, and because Nikish has committed acts causing injury or damage in the Southern District of Indiana.

ANSWER:

Admit only that Nikish does business in the Southern District of Indiana and that a substantial portion of the alleged events giving rise to this action originated in the Southern District of Indiana.  Nikish denies having caused Manatron any injury or damage.


**THE PARTIES**

3.      Manatron is a Michigan corporation whose principal office is located at 510 E. Milham Avenue, Portage, Michigan 49002.

ANSWER:

Admit.


4.      Since 1969, Manatron has been a leading provider of enterprise-level, integrated property software systems and services for state and local government and has a rich history in property recording, tax assessment, billing and collection. Manatron's software has helped government jurisdictions collect over one trillion dollars in revenue.

ANSWER:

AnnArbor_146774_1

Nikish is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4.

5.      Manatron provides software and services to 80 counties in Indiana, including Bartholomew County, Indiana. Indiana is Manatron's largest core market and therefore contains one of Manatron's most substantial customer bases.

ANSWER:

Nikish is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5.

6.      Counterclaim Defendant Nikish Software Corporation ("Nikish") is a New York corporation with offices located at 145 Commack Road, Commack, New York 11725. Nikish is in the business of developing software for both private and public entities.

ANSWER:

Nikish admits that it is a New York Corporation.  Nikish's current address, however, is 2171 Jericho Turnpike, Commack, NY 11725.

7.      Counterclaim Defendant Kishin Bharwani ("Bharwani") is the President and Chief Executive Officer of Nikish Software Corporation and is a resident of Newport, New York.

ANSWER:

Nikish admits that Mr. Bharwani is its President and Chief Executive Officer.  Mr. Bharwani, however, currently resides in Northport, NY.

**MANATRON'S BUSINESS**

8.      Manatron has developed certain property appraisal and property tax software, which it licenses under the following names: MVP, CAMA, MVP Tax, Pro Val and SMDA 2000. This software contains proprietary source codes consisting of confidential trade secret information.

AnnArbor_146774_1

ANSWER:

Nikish admits that Manatron uses the software names identified, above, and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 8.

9.      Manatron's source codes, particularly its MVP source code is confidential and proprietary information developed through the expenditure of a considerable amount of time and effort and large sums of money and is not known in the industry. The MVP source code and other confidential and proprietary trade secret information are valuable to Manatron because they derive economic value from the fact that they are not publicly available and such information would give any Manatron competitor, including Nikish, who wrongfully acquired such information an illegal and unfair competitive advantage.

ANSWER:

Nikish denies that it has "wrongfully acquired" any Manatron confidential and proprietary information.  Nikish is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 9.

10.     Manatron takes reasonable steps to protect its confidential and proprietary information including the use of written confidentiality agreements, a written corporate compliance manual, training sessions, limited access to computer systems, networks and facilities, password protected computers and internal regulation of the dissemination of information.

ANSWER:

Nikish is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10.

11.     In the course of its business, Manatron may provide its proprietary source code to other companies for the purpose of having the software developed. In such situations, the consulting/development agreements for Manatron's proprietary software are subject to a Confidentiality/Nondisclosure Agreement which continues through termination of the underlying software development agreement.

AnnArbor_146774_1

ANSWER:

Nikish is without knowledge or information sufficient to form a belief as to the truth of

the allegations of Paragraph 11.

12.    The MVP source code was developed for, compliant with and deployed in more than ninety (90) jurisdictions in Indiana and Ohio.

ANSWER:

Nikish is without knowledge or information sufficient to form a belief as to the truth of

the allegations of Paragraph 12.

## CONTRACTUAL RELATIONSHIP BETWEEN THE PARTIES

13.    In 2001 Nikish and Manatron entered into the "Software Development and Professional Services Agreement" for the development of Manatron's MVP software source code for a property appraisal and tax system in Dauphin County, Pennsylvania (hereinafter "2001 Pa. Software Development Agreement" attached hereto as Ex. A).

ANSWER:

Admit.

14.    Section 11.1, Nondisclosure, of the 2001 Pa. Software Development Agreement provides:

> Except as necessary to perform the Services and except as otherwise expressly permitted under this Agreement, Nikish shall maintain the confidentiality of, and shall not disclose or use the Confidential Information. As used in this agreement, the term "Confidential Information" means and includes the terms of this Agreement, the Base Software, the Tools, Deliverables, and any information or materials at any time furnished to Nikish by Manatron or any of its affiliates or to which Nikish is exposed during the course of performance of Services, concerning the business, operations or activities of Manatron and its affiliates, including without limitation, information concerning present or proposed products, product developments, plans, specifications, drawings, software, strategies, personnel, supply usage, facilities locations, business goals, finances, know-how, sales customers, and marketing or sales techniques.

AnnArbor_146774_1

ANSWER:

Nikish  admits that it signed the 2001 Pa. Software Development Agreement ("Dauphin County Agreement") attached as Exhibit A.

15.     Under the Agreement, Nikish agreed that the ownership of any software and source codes "shall be exclusively owned by Manatron" and "Manatron shall exclusively own all Proprietary Rights embodied in or pertaining to the Deliverables and any portions of the Deliverables made or conceived by Nikish."

ANSWER:

Denied.  Not all software used by Nikish when working under the Dauphin County Agreement was exclusively owned by Manatron.

16.     Nikish further agreed that "Manatron shall retain full and exclusive ownership of all materials and works provided by Manatron to Nikish under this Agreement, including all Proprietary Rights in the materials and works."

ANSWER:

Admit.

17.     Nikish further agreed to "not use any Confidential Information in any way to compete with Manatron, either directly or indirectly." The above confidentiality and nondisclosure obligations survived indefinitely after termination of the Agreement.

ANSWER:

Deny.  Any confidentiality and nondisclosure obligations under the Dauphin County Agreement survived for only a reasonable period of time.

18.     Section 15.5, Return of Materials, of the Agreement provides that upon termination of the Agreement, "Nikish shall deliver to Manatron all Confidential Information and other materials relating to Manatron's business, including, without limitation, all source code . . . and documents. . . Nikish shall not retain any photocopies, facsimiles, tapes or other copies of any of the materials or Confidential Information."

AnnArbor_146774_1

ANSWER:

    Admit.

    19.    Under Section 11.5, Nikish was allowed to retain copies of programming tools and source code that it develops "provided, however, that Nikish shall not (i) use the Tools to develop any software for federal, state and local governments; (ii) use the Tools to develop any product or service that competes with goods or services provided by Manatron."

ANSWER:

    Admit only that the Dauphin County Agreement states what Manatron quotes in

paragraph 19, however the Dauphin County Agreement was modified by Nikish and Manatron

under a settlement agreement effective October 14, 2005, to resolve a dispute regarding an

agreement between Manatron and Nikish to produce software for Baltimore County, Maryland.

    20.    Nikish failed to complete all requirements of the 2001 Pa. Software Development Agreement and left some of the source code undeveloped.

ANSWER:

    Denied.

    21.    On April 15, 2003, Nikish and Manatron entered into a "Consulting and Noncompetition Agreement" for the development of software for a property appraisal and tax system in Baltimore, Maryland (hereinafter "2003 Baltimore Agreement").

ANSWER:

    Admit only that Nikish and Manatron entered into the 2003 Baltimore Agreement on or

about April 15, 2003, however the 2003 Baltimore Agreement was modified by Nikish and

Manatron under a settlement agreement effective October 14, 2005.

    22.    Manatron's relationship with Nikish began to decline in late 2005 and early 2006. Manatron had performance issues with Nikish on the Dauphin County and Baltimore projects

AnnArbor_146774_1

that resulted in client disputes and Bharwani and Nikish were a substantial reason for those disputes. Nikish failed to property complete its obligations on the projects.

ANSWER:

Nikish admits only that its relationship with Manatron degraded beginning in late 2005.

Nikish denies the remaining allegations in paragraph 22.


23.     On October 14, 2005, Manatron and Nikish entered into a "Settlement, Release, and Business Services Agreement" (hereinafter "the Settlement Agreement") to discharge the parties from the dispute over the Baltimore project. Although the Settlement Agreement gave Nikish the right to engage in business with "any person or entity", Nikish was still bound by a duty of non-disclosure and non-competition with respect to Manatron's confidential and proprietary information, including MVP source code.

ANSWER:

Nikish admits only that it and Manatron entered into the Settlement Agreement and that

under that agreement, Nikish has the right to engage in business with "any person or entity."

Nikish is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 23.


24.     Under the terms of the 2001 Pa. Software Development Agreement and the 2003 Baltimore Agreement, Bharwani and Nikish had been granted access to Manatron's MVP software source code for the purpose of modifying it to be used in those jurisdictions. Nikish agreed that Manatron retained ownership of the MVP source code and that Nikish would not disclose the proprietary source code to third parties, or use the source code to compete with Manatron.

ANSWER:

Nikish admits only that it was granted access to Manatron's MVP source code for Ohio

jurisdictions, not Indiana MVP source code, in conjunction with the Dauphin County Agreement,

but that Nikish never used that source code when developing software for Dauphin County.  In

fact, Nikish developed software for Dauphin County independently upon a completely different

platform, VisualBasic.net, than the Ohio MVP source code.  Nikish admits the existence of

8

ownership and confidentiality provisions regarding MVP software found in its agreements with

Manatron.

25.     At some point in 2005, Nikish began developing a web-based full-service tax system for the State of Indiana local government service. This software is known as RMS 2.0. Upon information and belief, this program uses the same C# programming language and web-based architecture that Manatron hired Nikish to develop with respect to Manatron's MVP source code from Indiana.

ANSWER:

Nikish admits that it began developing web-based software for use by Indiana county

governments in 2005.  Nikish denies that the software it developed for use in Indiana has any

actionable similarity to Manatron's Indiana MVP code.  Nikish further denies that it has ever

possessed or seen Manatron's Indiana MVP source code, and denies that Nikish was ever hired

by Manatron to develop "web based architecture," because the products produced by Nikish for

Manatron were Client Server (thick client)Windows based and not developed using C#.

26.     From March 2006 through January 2007, Nikish continued to provide services to Dauphin County, PA, pursuant to the 2001 Pa. Software Development Agreement.

ANSWER:

Denied.  Nikish provided the services to Dauphin County during the period alleged in

paragraph 26 under a month-to-month agreement between Nikish and Manatron.

## EVENTS GIVING RISE TO THIS ACTION

27.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 26.

ANSWER:

Nikish incorporates its previous answers.

AnnArbor_146774_1

28.     On or about January 2, 2007, Bharwani resigned from his duties with respect to the Dauphin county, PA project and walked off the job without explanation or justifiable cause. Bharwani did not return any of the confidential and proprietary information as required by the 2001 Pa. Software Development Agreement.

ANSWER:

Nikish admits only that it terminated the month-to-month service agreement with

Manatrn regarding Dauphin County on or about January 2, 2007.  Nikish denies the remaining

allegations in paragraph 28.


29.     Due to Bharwani's shirking of his duties and obligations under the 2001 Pa. Software Development Agreement, key portions of the code remain undeveloped, while other portions that were developed, had severe defects in which Manatron has accrued costs in trying to repair.

ANSWER:

Denied.


30.     Prior to Bharwani abandoning the Dauphin County project, Manatron became aware that Nikish began marketing the RMS 2.0 to Indiana counties including Bartholomew County. Prior to 2006, Bharwani and Nikish had never marketed, developed, or deployed a solution to Indiana clients.

ANSWER:

Nikish is without information sufficient to form a belief as to the truth of the allegation in

the first sentence of Paragraph 30.  Nikish admits that it had not deployed a solution to Indiana

clients prior to 2006, but denies that it had not marketed or begun development of software for

use in Indiana before 2006.


31.     In August 2006, less than six (6) months after he reduced his obligations to Manatron, Bharwani responded to a Request for Proposal (RFP) for Vigo County, Indiana issued on or about July 24, 2006. Nikish's response to the Vigo County RFP offered a Tax and Billing Collection system -- the RMS 2.0 product.

AnnArbor_146774_1

ANSWER:

Admit

32.     Nikish represented in the response to RFP that the RMS 2.0 was complaint with Indiana requirements and that it was developed and owned by Nikish.

ANSWER:

Nikish admits that it represented in its RFP response that RMS 2.0 was complaint with

Indiana requirements, with the exception of designated items that Nikish estimated would be

compliant by the end of the first quarter of 2007.

33.     Specifically, there were numerous representations made in the RFP that concerned Manatron.

        (a)     The response to the Vigo County RFP made material misrepresentations in regards to prior project work for Manatron in Dauphin County and the City of Baltimore. The response mentioned that Nikish had done work in Dauphin County and inferred that Dauphin County was Nikish's client

ANSWER:

Nikish denies that it made any material misrepresentations in the RFP response to Vigo

County.

        (b)     The RMS 2.0 used naming conventions from the Baltimore project.

ANSWER:

Denied.

        (c)     The project manager that Bharwani proposed using was a retired Manatron employee whose only experience was with Manatron's Indiana and Ohio MVP products.

11

ANSWER:

Nikish admits only that the project manager it proposed had experience with Manatron's

Ohio MVP product.  Nikish is without information sufficient to form a belief as to the truth of

the remaining allegations in paragraph 33(c).

> (d)     Nikish also presented an unusually quick delivery turnaround time that
> was difficult to justify for a purportedly new, large-scale software product, such as the
> RMS 2.0, that Nikish purportedly developed from scratch.

ANSWER:

Nikish denies that the delivery timeframe represented in the RFP response to Vigo

County was unusual for a company that is more efficient and better capable at software

development than Manatron.

> 34.     Given the quick delivery turnaround time provided in the response to RFP,
> Manatron's knowledge of Nikish's operating structure and performance ability, the use of
> naming conventions, the use of former Manatron personnel intimately familiar with the MVP
> code, and Nikish's possession of the MVP code through its business dealings with Manatron, it
> was clear to Manatron that Nikish's RMS 2.0 was a derivative work of Manatron's MVP source
> code.

ANSWER:

Nikish denies that its delivery turnaround time was unusual, and further denies that any

knowledge of Manatron's [sic] "operating structure and performance ability", "naming

conventions", use of former Manatron personnel, or Nikish's possession of the Ohio MVP code

had anything to do with Nikish's RMS 2.0 product.  Nikish denies that its RMS 2.0 product is a

derivative of Manatron's MVP source code.

> 35.     Upon information and belief., the RMS 2.0 software is not compliant under
> Indiana law, as required by 50 I.A.C. 23.

ANSWER:

    Denied.

    36.    On or about November 2006, Manatron decided to send a letter to its Indiana clients stating its concerns about the RMS 2.0. Manatron's Indiana clients were not aware of its business relationship with Nikish, nor of Bharwani's possession of the MVP source code deployed in their jurisdiction.

ANSWER:

    Nikish admits only that Manatron wrongfully delivered correspondence to Indiana

governments disparaging and defaming Nikish.  Nikish is without information sufficient to form

a belief as to the truth of the remaining allegations in paragraph 36.

    37.    Since the November 2006 letter was distributed, two Indiana counties have signed contracts with Nikish to replace the Manatron MVP system. These counties are Clinton County and Owen County.

ANSWER:

    Admit only that the two Indiana Counties noted in paragraph 37 signed contracts with

Nikish despite the defamatory letter Manatron sent.

## CAUSES OF ACTION

### Count I

### Misappropriation of Trade Secrets
### (Indiana Uniform Trade Secrets Act, hid. Code 24-2-3-1 et. seq.)

    38.    Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 37.

ANSWER:

    Nikish incorporates its previous answers.

AnnArbor_146774_1

39.     The proprietary business information, source codes and customer information Manatron entrusted to Nikish constitute trade secrets because Manatron derives independent economic value from that information, such information is not readily available or ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and because the confidential information is the subject of reasonable efforts to maintain its secrecy.

ANSWER:

Nikish is without information sufficient to form a belief as to the truth of the allegations

in paragraph 39

40.     Pursuant to its business relationship with Manatron under the 2001 Pa. Software Development Agreement and the 2003 Baltimore Agreement, Nikish had access to Manatron's Confidential information, specifically its MVP source code. Manatron entrusted Nikish with its proprietary trade secret and confidential information in performance of Nikish's duties to develop the software pursuant to the respective Agreements.

ANSWER:

Nikish admits only that Manatron provided a copy to Nikish of Manatron's Ohio MVP

source code at the time the parties entered into the Dauphin County Agreement, but that Nikish

has never developed software that relies upon that source code in any way.  Nikish is without

information sufficient to form a belief as to the truth of the remaining allegations in paragraph

40.

41.     Nikish and Bharwani knew the information was confidential and that it was considered to comprise trade secrets of Manatron, knew that the MVP source code was a valuable commercial asset of Manatron's, and knew that Manatron had expended countless time, effort, and money in developing its MVP source code and other confidential and trade secret information.

ANSWER:

Nikish admits that Manatron considered the Ohio MVP source code as confidential, but is

without information sufficient to form a belief as to the truth of the allegations in paragraph 41.

14

42.     The Agreements signed by Nikish contained Confidentiality and Non-disclosure provisions. The Agreements also prohibited Nikish from using any copies of any materials, that resulted from its work under the Agreements, to develop software programs for federal, state, and local governments, or to otherwise use such materials to directly compete with goods or services provided by Manatron.

ANSWER:

Nikish admits only that the Agreements it signed with Manatron contained

Confidentiality and Non-disclosure provisions, but that these Agreements were modified by the

Baltimore Settlement Agreement.


43.     Nikish misappropriated the MVP source code it had access to pursuant to the 2001 Pa. Software Development Agreement and the 2003 Baltimore Agreement in violation of the Agreements and without Manatron's consent.


ANSWER:

Denied.


44.     The RMS 2.0 provides the same services as Manatron's MVP source code and upon information and belief, this program uses the same C# programming language and webbased architecture that Manatron hired Nikish to develop with respect to Manatron's MVP source code from Indiana.

ANSWER:

Nikish admits only that its RMS 2.0 provides some functionality similar to that

Manatron's MVP product purports to accomplish, but denies the remaining allegations of

paragraph 44.


45.     The Agreements obligated Nikish to use the MVP source code only on behalf of Manatron and for no other purpose and further established that any work that Nikish created by using the source code is the property of Manatron. Nikish developed the RMS 2.0 using Manatron's confidential trade secret information, Manatron is the rightful owner of the RMS 2.0 as it was derived using Manatron's proprietary MVP source code.

AnnArbor_146774_1

ANSWER:

Nikish admits only the allegations in the first sentence of paragraph 45, with the

exception that certain tools and other software developed by Nikish under its Agreements with

Manatron were not the property of Manatron.  Nikish denies the remaining allegations in

paragraph 45.


46.     On January 16, 2007, Manatron requested return of all deliverables, source codes, including a copy of the Manatron MVP application source code used in Dauphin County, and other property in Bharwani's possession pursuant to the terms of the Agreement. Nikish has not complied with this request.

ANSWER:

Nikish admits only the allegations in the first sentence of paragraph 45, with the

exception that Manatron did not specify the return of its old Ohio MVP source code.  Nikish

denies the remaining allegations in paragraph 46.


47.     Manatron has a right to receive the deliverables, documentation and other materials that it owns and Nikish has no right to hold the documents hostage. The Agreements required the return of all deliverables upon termination of the Agreement.

ANSWER:

Nikish denies that it wrongfully possesses any "deliverables."


48.     Nikish knowingly, willfully, and deliberately misappropriated Manatron's MVP source code, trade secrets and confidential information with full knowledge of the secret and confidential nature of said information and of its commercial value.

ANSWER:

Denied.


49.     Nikish has been, and will continue to be, unjustly enriched by its misappropriation of Manatron's trade secrets and confidential information. Nikish will continue to use or threaten to use its RMS 2.0 product (an illegal derivative of Manatron's MVP source code), divulge,

inevitably disclose, acquire and/or otherwise misappropriate Manatron's trade secrets and confidential information.

ANSWER:

    Denied.


50.    Two Indiana counties, Clinton and Owen, have already signed contracts with Nikish to replace the Manatron MVP system with the RMS 2.0 product. Upon information and belief, the RMS 2.0 product is not compliant with applicable Indiana software requirements law.

ANSWER:

    Nikish admits only that it has signed contracts with Clinton and Owen Counties.  Nikish

denies the remaining allegations in paragraph 50.


51. As a result of Nikish and Bharwani's actions, Manatron has been irreparably harmed and damaged.

ANSWER:

    Denied.


## Count II

## Breach of Contract


52.    Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 51.

ANSWER:

    Nikish incorporates its previous answers.


53.    Nikish and Bharwani were subject to the 2001 Pa. Software Development Agreement which required Nikish to develop Manatron's MVP source code for use in a property tax and appraisal system in Dauphin county, PA, to protect the confidentiality of Manatron's confidential information and trade secrets entrusted to Nikish pursuant to the Agreement, and not to use them for Nikish's or Bharwani's personal/business gain.

AnnArbor_146774_1

ANSWER:

    Nikish admits only that the Agreements it signed with Manatron contained

Confidentiality and Non-disclosure provisions, but that these Agreements were modified by the

Baltimore Settlement Agreement.

54.    This Agreement obligated and continues to obligate Nikish and Bharwani to hold Manatron's confidential and proprietary information in trust and not to disclose this information or use this information to develop software programs to compete with Manatron.

ANSWER:

    Nikish admits only that the Agreements it signed with Manatron contained

Confidentiality and Non-disclosure provisions, but that these Agreements were modified by the

Baltimore Settlement Agreement.

55.    The Agreements are valid and enforceable contracts. The confidentiality requirements, non-disclosure and non-competition clauses, and reasonable efforts clauses are reasonable and necessary to protect Manatron's legitimate protectable interests in its proprietary information and relationships.

ANSWER:

    Nikish is without information sufficient to form a belief as to the truth of the allegations

in paragraph 55.

56.    Manatron has fully performed all of its obligations under the Agreements.

ANSWER:

    Denied.

57.    Nikish has breached the Agreements by:

    (a)    Bharwani walking off the Dauphin county job site leaving some of the source code undeveloped. Key portions of the code remain undeveloped, while other

18

portions that were developed, have severe defects for which Manatron has incurred damages in attempting to repair;

ANSWER:

     Denied.

     (b)    Nikish failing to return confidential and proprietary Materials and other Deliverables, including the MVP application source code, as required by the Agreement. Nikish did not have a right to terminate unless Manatron was in default or ceased doing business in the normal course. Neither of those conditions were present;

ANSWER:

     Denied.

     (c)    Nikish using confidential and proprietary Materials and Deliverables to develop a software program, the RMS 2.0 (an illegal derivative of Manatron's MVP source code), which Nikish marketed to state and local governments in direct competition with Manatron, and in violation of the 2001 Pa. Software Development Agreement;

ANSWER:

     Denied.

     (d)    Nikish using Manatron's confidential information to the detriment of Manatron and/or to the benefit of Nikish;

ANSWER:

     Denied.

     (e)    Usurping business/sales opportunities from Manatron; and

ANSWER:

     Denied.

     (f)    Utilizing Manatron's confidential information for personal/corporate gain.

AnnArbor_146774_1

<u>ANSWER</u>:

     Denied.

     58.     Because of Nikish's breach, Manatron has assumed software support duties in-house and in order to support its product, it needs the requested confidential deliverables and documentation immediately or it will continue to suffer damages.

<u>ANSWER</u>:

     Denied.

     59.     As a result of Nikish's breach of the Agreements, Manatron has been damaged.

<u>ANSWER</u>:

     Denied.

## Count III

## Unfair Competition

     60.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 59.

<u>ANSWER</u>:

     Nikish incorporates its previous answers.

     61.     Upon information and belief, Nikish is recruiting Manatron employees who have knowledge of Manatron's confidential and trade secret information and is inducing those employees to breach their agreements and to wrongfully use and disclose Manatron's confidential and trade secret information to Nikish for the commercial benefit of and exploitation by Nikish.

<u>ANSWER</u>:

     Denied.

     62.     Nikish has misappropriated Manatron's trade secrets and confidential information to develop the RMS 2.0 product. It is also marketing and has sold this product to current and potential customers of Manatron, in direct violation of the Agreements.

AnnArbor_146774_1

ANSWER:

      Denied.


      63.     Nikish willfully took the foregoing acts to gain an unfair competitive advantage over Manatron. Nikish was fully aware of its wrongful conduct and intended to cause harm to Manatron and in the process benefit itself.

ANSWER:

      Denied.


      64.     Nikish is unfairly competing in the marketplace and took these actions while being entrusted with Manatron's confidential and proprietary information.

ANSWER:

      Denied.


      65.     As a result of Nikish's actions, Manatron has been damaged.

ANSWER:

      Denied.


**Count IV**

**Common Law Copyright Infringement**


      66.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 65.

ANSWER:

      Nikish incorporates its previous answers.


      67.     Manatron is the owner of certain property appraisal and property tax software, which includes the MVP application source code. Manatron has been the continuous owner in all

AnnArbor_146774_1

exclusive rights to the source code, including the right to the license, sale, reproduction and distribution of the source code.

ANSWER:

Nikish is without information sufficient to form a belief as to the truth of the allegations in paragraph 67.

68.     Nikish, without permission or consent of Manatron, has used the MVP source code and other confidential and proprietary information, to create a derivative work -- the RMS 2.0. Nikish continues to use, copy, and reproduce the MVP source code without Manatron's permission or consent.

ANSWER:

Denied.

69.     Through Nikish's continuous and ongoing acts of copying and reproducing the MVP source code and other confidential and proprietary information, Nikish has violated Manatron's exclusive ownership rights to reproduce the MVP source code, to prepare derivative programs based on the MVP source code, and to distribute copies of the source code.

ANSWER:

Denied.

70.     Nikish's acts have been willful, intentional, and in disregard of and with indifference to the ownership rights of Manatron and constitute infringement of Manatron's copyright interests.

ANSWER:

Denied.

71.     As a result of Nikish's infringing actions, Manatron has been damaged.

ANSWER:

Denied.

AnnArbor_146774_1

## Count V

## Breach of Fiduciary Duty/Confidentiality

72.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 71.

ANSWER:

   Nikish incorporates its previous answers.

73.     By virtue of its business/contractual relationship of confidentiality with Manatron, Nikish stood in a fiduciary relationship with Manatron, Nikish was entrusted with Manatron's MVP application source code and was compensated by Manatron to work on behalf of Manatron's best interest.

ANSWER:

   Denied.

74.     As a fiduciary, Nikish was required to act with the utmost good faith and fidelity toward Manatron and as such, was prohibited from actively exploiting its business relationship with Manatron to develop its RMS 2.0 product for its own personal benefit and hindering the ability of Manatron to continue to do business in the market.

ANSWER:

   Denied.

75.     Nikish breached its fiduciary duty to Manatron by among other things:

   (a)     Competing with Manatron by misappropriating Manatron's confidential and proprietary information to develop the RMS 2.0 product to directly compete with Manatron and in direct violation of the terms of confidentiality;

ANSWER:

   Denied.

   (b)     Using Manatron's confidential information to the detriment of Manatron and/or the benefit of Nikish;

AnnArbor_146774_1

<u>ANSWER</u>:

Denied.

      (c)     Soliciting Manatron's current and potential customer base with a misappropriated illegal derivative copy of the MPV source code - - the RMS 2.0 product;

<u>ANSWER</u>:

Denied.

      (d)     Utilizing Manatron's confidential and proprietary information to facilitate a lucrative revenue stream for Nikish vis a vis the RMS 2.0 product;

<u>ANSWER</u>:

Denied.

      (e)     Usurping corporate business/sales opportunities of Manatron in the Indiana market;

<u>ANSWER</u>:

Denied.

      (f)     Utilizing Manatron's resources for personal and/or corporate gain; and

<u>ANSWER</u>:

Denied.

      (g)     Failing to inform Manatron of events or actions against the company's interests.

<u>ANSWER</u>:

Denied.

76.     As a result of these breaches, Manatron has been damaged.

AnnArbor_146774_1

ANSWER:

    Denied.

## **Count VI**

## **Breach of Duty of Good Faith and Fair Dealing**

    77.    Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 76.

ANSWER:

    Nikish incorporates its previous answers.

    78.    In 2001 Nikish entered into the 2001 Pa. Software Development Agreement.

ANSWER:

    Admit,

    79.    Nikish had an implied duty of good faith and fair dealing with respect to the Agreement and any amendments thereto.

ANSWER:

    Nikish is without information sufficient to form a belief as to the truth of the allegations

in paragraph 79.

    80.    Pursuant to that Agreement, Nikish and Bharwani agreed to "use commercially reasonable efforts" to develop the software program, maintain confidentiality of Manatron's confidential and proprietary information, to return confidential information upon termination of the Agreement, and not to use the confidential information to develop software programs that would directly compete with Manatron.

AnnArbor_146774_1

ANSWER:

Nikish is without information sufficient to form a belief as to the truth of the allegations in paragraph 80.

81.     Nikish and Bharwani breached their duty of good faith and fair dealing by among other things:

        (a)     Bharwani walking off the job site prior to completion of the Dauphin county project, and leaving software source codes undeveloped;

ANSWER:

Denied.

        (b)     Developing the RMS 2.0 product, an illegal derivative of Manatron's MVP source code, during the pendency of its contractual relationship with Manatron;

ANSWER:

Denied.

        (c)     Failing to return confidential Materials and Deliverables upon termination of the Agreement; and

ANSWER:

Denied.

        (d)     Soliciting and responding to the Vigo County RFP in direct competition with Manatron in violation of the Agreements.

ANSWER:

Denied.

82.     As a result of these breaches, Manatron has been damaged.

AnnArbor_146774_1

ANSWER:

      Denied.

## Count VII

## Tortious Interference with Contractual Relationships or Business Expectancy

      83.     Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 82.

ANSWER:

      Nikish incorporates its previous answers.

      84.     Nikish had knowledge of Manatron's contracts and relationships with certain customers/counties in Indiana to provide property tax and appraisal software services and Manatron's expectancy that these customers would continue to utilize Manatron's products and services.

ANSWER:

      Nikish was aware of some contractual relationships between Manatron and customers in

Indiana, but is without information sufficient to form a belief as to the truth of the remaining

allegations in paragraph 84.

      85.     Manatron had reasonably come to expect that its customers would remain its customers in that each had been a customer for many years and Manatron had invested substantial resources in maintaining the relationships.
ANSWER:

      Nikish is without information sufficient to form a belief as to the truth of the allegations

in paragraph 85.

      86.     Despite having knowledge of the continuing obligations and expectancies, Nikish interfered with Manatron's contracts, or its business expectancies, by utilizing or disclosing Manatron's confidential and proprietary information to develop the RMS 2.0, which it then

marketed and sold to Manatron's customer base, usurping sales opportunities from Manatron, and using Manatron's good will and confidential information to generate revenue for Nikish.

ANSWER:

    Denied.

87.    As a result of any of Nikish's actions, Manatron has been damaged.

ANSWER:

    Denied.

## Count VIII

## Unjust Enrichment

88.    Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 87.

ANSWER:

    Nikish incorporates its previous answers.

89.    Nikish and Bharwani have enjoyed valuable benefits as a result of their business relationship and access to Manatron's confidential and proprietary information.

ANSWER:

    Denied.

90.    Benefits received by Nikish through the actions alleged herein were obtained improperly and were not in exchange for proper consideration or through the time and effort of Nikish.
ANSWER:

    Denied.

91.    As a direct and proximate result of Nikish's unjust enrichment, Manatron has been damaged and Manatron is entitled to recover its damages to be proven at trial.

AnnArbor_146774_1

ANSWER:

    Denied.

## Count IX

## Deception (Ind. Code 35-43-5-3)

    92.    Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 91.

ANSWER:

    Nikish incorporates its previous answers.

    93.    Nikish knowingly and/or intentionally misapplied and misappropriated Manatron's confidential and proprietary information, which Manatron entrusted to Nikish through their Agreements for development of Manatron's MVP source code.

ANSWER:

    Denied.

    94.    Nikish knew that this action was unlawful and involved a risk of loss or detriment to Manatron.

ANSWER:

    Denied.

    95.    Nikish, with the intent to defraud, misrepresented the source and quality of the RMS 2.0 product as its own, knowing that the RMS 2.0 is an illegal derivative of Manatron's MVP source code.

ANSWER:

    Denied.

    96.    As a result of Nikish's deceptive acts with respect to Manatron's confidential and proprietary information, Manatron has been damaged and is entitled to actual damages, treble damages, costs and attorney's fees pursuant to the Indiana Crime Victim's Act, Ind. Code §34-

24-3-1.

ANSWER:

      Denied.

## **Count X**

## **Conversion (Ind. Code 35-43-4-3)**

     97.    Manatron realleges and incorporates by reference the allegations which are contained in paragraphs 1 through 96.

ANSWER:

      Nikish incorporates its previous answers.

     98.    Nikish and Bharwani knowingly and/or intentionally exerted unauthorized control over the property of Manatron.

ANSWER:

      Denied.

     99.    Nikish used Manatron's confidential and proprietary information, namely its MVP source code, to create an illegal derivative copy -- the RMS 2.0 product. This was done without Manatron's consent.

ANSWER:

      Denied.

     100.    Nikish knowingly and/or intentionally exerted unauthorized control over the good will developed by Manatron.

ANSWER:

      Denied.

AnnArbor_146774_1

101.    As a result of Nikish's conversion of Manatron's confidential and proprietary information, Manatron has been damaged and is entitled to actual damages, treble damages, costs and attorney's fees pursuant to the Indiana Crime Victim's Act, Ind. Code §34-24-3-1.

ANSWER:

Denied.

## AFFIRMATIVE DEFENSES

1.    Manatron's Counterclaims fail to state a claim against Nikish upon which relief can be granted.

2.    Any actions by Kishin J. Bharwani were taken only in the capacity as a representative of Nikish Software Corp., therefore he is not personally liable to Manatron for any alleged damages.

3.    The RMS 2.0 product produced by Nikish does not exploit any of the rights granted under Section 106 of the U.S. Copyright Act, as required by Section 501 of the Copyright Act.  Without limiting the foregoing, the RMS 2.0 product does not reproduce copies of, or create a derivative work based upon, any Manatron product.

4.    17 U.S.C. § 401, *et seq*. preempts Manatron's copyright claim asserted in Count IV.  Manatron has not alleged that it has registered or pre-registered its copyright in its MVP product as required by 17 U.S.C. § 411(a).  This Court, therefore, must dismiss Manatron's copyright claims because the Court lacks subject matter jurisdiction.

5.    Plaintiff and defendants were involved in a dispute involving an agreement to produce software for Baltimore County, Maryland.  The parties entered into a settlement agreement effective October 14, 2005, to resolve that dispute, as well as all other claims related

31

AnnArbor_146774_1

to the parties' business relationship. Plaintiff has therefore waived any and all claims against defendants related to either the Dauphin County Agreement or Baltimore Agreement that accrued prior to signing the Covenant Not To Sue; General Release effective October 14, 2005.

6.      On February 24, 2005, defendants delivered to plaintiff the source code and associated files for the tax billing software that Nikish delivered to Dauphin County and installed under the Dauphin County Agreement.   On or about April 12, 2007, defendants delivered to plaintiff the latest version of the source code and associated documents subject to the Dauphin County Agreement.

7.      Manatron has no rights in software developed by Nikish that is not specifically identified as a Deliverable in any Agreement between Nikish and Manatron.

8.      Manatron has failed to mitigate damages, if any.

9.      Manatron's claims against Nikish are barred in whole or in part by the equitable doctrines of estoppel and laches.

10.      Manatron's claims are barred in whole or in part by the doctrine of unclean hands.

11.      Manatron's allegations are in bad faith and with an improper purpose and motive.

12.      Any obligations of Nikish under the month-to-month agreement to provide service to Dauphin County were excused by Manatron's prior material breach.

13.      Any outstanding obligations of Nikish under the Dauphin County Agreement were excused by Manatron's repudiation of that contract.

AnnArbor_146774_1

14.     The confidentiality and non-disclosure provisions of the Dauphin County Contract and the Baltimore Contract have no application to obsolete MVP source code from Ohio that was given to Nikish to evaluate in 2001.

Nikish reserves the right to state additional affirmative and/or special defenses identified during discovery.

Respectfully submitted,

s/ G. Christopher Bernard
BODMAN LLP
201 South Division Street, Suite 400
Ann Arbor, MI 48104
(734) 930-2482
cbernard@bodmanllp.com
(P57939)
November 16, 2008                          Attorneys for Counter Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

J. Lee McNeely
James Dimos j
Joel E. Tragesser
Brady J. Rife
Richelle Marie Harris

s/ G. Christopher Bernard
BODMAN LLP
201 South Division Street, Suite 400
Ann Arbor, MI 48104
(734) 930-2482
cbernard@bodmanllp.com
(P57939)
Attorneys for Counter Defendants

33

AnnArbor_146774_1