**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

NIKISH SOFTWARE CORPORATION AND
KISHIN BHARWANI,
,

      Plaintiffs,

v.

MANATRON, INC.

      Defendants.

_____/

MANATRON, INC.

      Counterclaimant.

v.

NIKISH SOFTWARE CORPORATION AND
KISHIN BHARWANI,

      Counterdefendants.

_____/

CASE NO. 1:07-cv-00358-TWP-DML

Hon. Tanya Walton Pratt

Magistrate Judge Debra McVicker Lynch


**BRIEF IN SUPPORT OF MOTION BY PLAINTIFFS-COUNTERDEFENDANTS**
**NIKISH SOFTWARE CORPORATION AND KISHIN BHARWANI UNDER**
**FED.R.CIV.P. 56 FOR SUMMARY JUDGMENT OF DEFENDANT'S**
**COUNTERCLAIM**

**TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................................ i

INDEX OF AUTHORITIES...................................................................................... ii

ISSUES PRESENTED............................................................................................. iii

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE.................................... iv

I.   INTRODUCTION ............................................................................................1

II.  FACTS ............................................................................................................2

    A.  Background of the Dispute. ......................................................................2

        1.   The early relationship between the parties..........................................2

        2.   Nikish and Manatron compete for business in Indiana.........................2

        3.   Nikish files this action. ....................................................................2

        4.   After considerable delay, Manatron files its counterclaim. ...................3

    B.  Manatron Alleges Nikish Copied MVP...................................................3

    C.  The Parties Retain an Expert Computer Scientist....................................4

    D.  The Parties Agreed Upon Instructions to the Expert. .................................6

    E.  The Expert Reviewed the Parties' Source Code.......................................10

    F.  The Expert Found No Relevant Similarities.............................................10

III. SUMMARY JUDGMENT STANDARD...........................................................11

IV. ARGUMENT ..................................................................................................11

    A.  Manatron's Claim for Common Law Copyright Infringement Is Preempted By
        the Copyright Act Because "Common Law Copyright Infringement" Claims
        Have Been Abolished ............................................................................11

    B.  Nikish Did Not Copy Any Original Expression. .......................................13

    C.  This Court Should Grant Nikish Summary Judgment of All Counts of the
        Counterclaim .......................................................................................15

IV. CONCLUSION...............................................................................................17

# INDEX OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) ........................................................ 11

*Baltimore Orioles, Inc. v. Major League Baseball Players Asso.*, 805 F.2d 663, 678 n.20 (7th Cir. Ill. 1986) ............................................................................................................................ 12

*Celotex Corp. v. Catreet,* 477 U.S. 317, 327 (1986) .................................................................. 11

*Computer Associates International, Inc. v. Altai, Inc.,* 982 F.2d 693 (2nd Cir. 1992) ................. 14

*Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340 (1991) ........................... 14

*Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 909 (7th Cir. Ill. 2005) ............................................ 12

**Statutes**

17 U.S.C. § 102(a) ...................................................................................................................... 15

17 U.S.C. § 102(b) ............................................................................................................. vi, 4, 15

17 U.S.C. § 106 (2009) ............................................................................................................... 12

17 U.S.C. § 301 (2009) ............................................................................................................... 12

Fed. R. Civ. P. 56(c) .................................................................................................................. 11

## ISSUES PRESENTED

1.        Whether Plaintiff-Counterdefendants' Nikish Software Corporation ("Nikish") Motion for Summary Judgment should be granted on the issue of copyright infringement where: (a) the computer scientist expert retained by the parties has concluded that Nikish has not copied anything constituting "original authorship" from the Manatron computer source code, and (b) the copying of original authorship is a required predicate act for copyright infringement, and (c) the only similarities between the computer source code for the parties were legally irrelevant because they were unprotectible as a matter of law under the U.S. Copyright Act (comprised of processes common to business software, elements of software co-owned by the parties, and consisted of content required by law).

        Nikish answers "YES."


2.        Whether the conclusions of the computer scientist expert conclusively refute each of the bases Manatron's claims of trade secret misappropriation, breach of contract, unfair competition, breach of fiduciary duty, breach of the duty of good faith and fair dealing, tortious interference, unjust enrichment, deception, and conversion thus preventing Manatron from raising genuine issues of material fact in support of these claims?

        Nikish answers "YES."

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1.      Manatron provides property tax software, appraisal, and other services to state and local governments.  *See* Complaint (Dkt. 1, Exhibit A) at ¶¶ 6.

2.      Nikish develops software in the field of real estate, including tax software for use by local governments.  *See* Complaint at  4, 13.

3.      In 2001, Manatron entered into a contract with Nikish, pursuant to which Nikish was to develop certain tax accounting software (known to the parties as "Tax Billing") for Manatron to deliver to its client, Dauphin County, Pennsylvania.  (the "Dauphin County Agreement").  *See* Complaint at ¶ 7; Counterclaim (Dkt. No. 51) at  ¶ 13.

4.      Nikish developed computer software called RMS 2.0, which performed functions regarding the collection of property taxes.  *See* Complaint at ¶ 13; Counterclaim at ¶ 25.

5.      On or about December 1, 2006, after Manatron learned that Nikish was marketing RMS 2.0 to Indiana counties, Manatron sent a letter to each of the Auditors of a majority of Indiana's counties.    Manatron's December 1, 2006 letter asserted that Manatron had "credible evidence" that Nikish's RMS 2.0 was "nothing more than a misappropriated derivative copy of the Manatron MVP system" that Manatron marketed in Indiana. *See* Complaint at ¶ 18; Exhibit A, Manatron Letter Dated December 1, 2006.

6.      On or about March 15, 2007, Manatron filed an action in Michigan alleging that Nikish breached an agreement pursuant to which Nikish was to develop certain tax accounting software (known to the parties as "Tax Billing") for Manatron to deliver to its client, Dauphin

County, Pennsylvania.  (the "Dauphin County Agreement").  *See* Exhibit B, Michigan

Complaint.[1]

   7. The parties settled the Michigan action, and as a result of that settlement, the

Western District of Michigan entered an order dismissing all of Manatron's claims in that case

with prejudice.  *See* Exhibit C, Order of Dismissal.

   8. The settlement agreement among the parties in the Michigan action (the

"Michigan Settlement Agreement") also contained a provision acknowledging co-ownership of

software known to the parties as "Tax Claim":

> Manatron and Nikish hereby jointly own all intellectual property
> and other rights in the Software [Tax Claim], effective as of
> October 23, 2001. Each party is free to exploit the intellectual
> property rights in the Software with no obligation to the other, and
> shall specifically have no duty of accounting to, reporting to, or
> cooperating with, the other.

Exhibit D, Michigan Settlement Agreement.

   9. On February 15, 2007, Nikish filed this action against Manatron for Tortious

Interference with a Business and/or Contractual Relationship (Count 1); Defamation of Nikish

Software Company (Count 2); Defamation of Kishin Bharwani, individually and in his capacity

as the President and Chief Executive Officer of Nikish Software Company (Count 3); and Breach

of Contract (i.e. breach of the Release) (Count 4).  *See* Complaint.

   10. On April 20, 2007, Manatron filed an answer, which included affirmative

defenses but no counterclaims.  *See* Answer (Dkt. No. 12).

---

[1] Manatron first filed the Michigan Complaint in state court (Kalamazoo County Circuit Court),
and Nikish removed the action to the Federal District Court, Western District of Michigan on the
basis of diversity jurisdiction.

11.     On September 15, 2008, almost one and a half years after Manatron filed its answer, defendant filed a motion for leave to assert a counterclaim for injunctive relief and damages.  *See* Defendant's Motion for Leave to Assert Counterclaim for Injunctive Relief and Damages (Dkt. No. 40).

12.     This Court granted Manatron leave to file its counterclaim.  Manatron's counterclaim contains ten counts:  Misappropriation of Trade Secrets (Count I); Breach of Contract (Count II); Unfair Competition (Count III); Common Law Copyright Infringement (Count IV); Breach of Fiduciary Duty/Confidentiality (Count V); Breach of Duty of Good Faith and Fair Dealing (Count VI); Tortious Interference with Contractual Relationships or Business Expectancy (Count VII); Unjust Enrichment (Count VIII); Deception (Count IX); and Conversion (Count X).  *See* Counterclaim.

13.     During discovery in this case, the parties conferred with the Magistrate Judge and agreed to develop a plan for producing each parties' source code for review by an expert.  *See* Joint Report Regarding Discovery Plan for Production of Source Code (Dkt. No. 72).

14.     After further conferences with the Magistrate Judge, the parties submitted a Joint Discovery Plan for Production of Source Code ("Joint Discovery Plan") (Dkt. No. 79) that provided a framework for an expert review of RMS, MVP, and Tax Claim.

15.     In the Joint Discovery Plan, the parties agreed that the expert's findings regarding similarity would be binding:

> 10. The Parties stipulate and agree that **any findings by the Expert regarding Similarity are findings of fact presumptively binding upon both parties** in the absence of clear error. Both Parties reserve the right to argue the legal significance of such findings including, but not limited to, under 17 U.S.C. § 102(b) and doctrines under copyright law that recognize that not all

> similarities are actionable, such as scenes a faire, standard software
> design and development conventions and practices, elements
> dictated by externalities, and the truth of the statements made by
> Manatron in its December 1, 2006 letter.

Joint Discovery Plan (Dkt. No. 79) at 6 (emphasis added).

16.     After the parties submitted the Joint Discovery Plan, they agreed to finalize

instructions to the expert for the review.  *See* Order approving February 2, 2010 Joint Status

Report Regarding Plan for Source Code Expert Review (Dkt. No. 101).

17.     The parties agreed that Dr. Todd Austin, Professor at The University of Michigan

Department of Electrical Engineering and Computer Science, would examine the source code for

portions of MVP selected by Manatron, and the source code for RMS' corresponding features

and functions. *See* Magistrate Judge's Order entered on March 19, 2010 (Dkt. No. 105).

18.     The parties jointly developed and agreed upon instructions to Dr. Austin

regarding the source code review.  *See* Exhibit E, Dimos email with attachment dated December

24, 2009.

19.     Dr. Austin acknowledged the parties' instructions and incorporated them in his

report, dated June 4, 2010. *See* Exhibit F, Expert Report of Prof. Todd Austin, at 15-17.

20.     Dr. Austin received copies of MVP, RMS, and Tax Claim source code, and

conducted a comparison consistent with the parties' agreed instructions.  *See id.* at 1-2.

21.     Dr. Austin concluded that there were no relevant similarities between RMS and

MVP:

> In summary, I was unable to find any relevant similarities between
> the RMS and MVP code bases.  While a few overarching
> similarities do exist between the two code bases e.g., object-
> oriented programming style, use of decimal arithmetic, and
> incorporation of a database backend with an SQL interface), these
> similarities are indicative of many business-oriented applications.
> The differences between the applications (e.g., use of different

programming languages, employment of different code organizations and different levels of code factoring) provided more insights, suggesting that the two code bases do not have shared authorship.  In examining individual source code files in the RMS system, the majority of the files implement simple data routines, user interface, or functionality that could not be located in the MVP code base.  The remaining files implement functionality contained in the MVP code base, but in all cases the two implementations are markedly different, to the extent that in most cases what is contained in one file in the RMS code base is spread over many files in the MVP code base.

*Id*. at 13-14.

## I.   INTRODUCTION

Manatron is a competitor of Nikish in the market for tax software.  In December 2006, Manatron sent a letter to the auditor of every county in Indiana.  It told those auditors that Nikish stole software from Manatron and that any county that entered into a license agreement with Nikish would be sued.  Nikish knew that the statement was false, scurrilous, and published solely to harm Nikish in the marketplace.

Manatron refused to remedy this public disparagement, and Nikish brought a claim before this Court for, *inter alia,* commercial disparagement.  Nearly two years later, Manatron filed a counterclaim for, *inter alia,* copyright infringement of its software.

The parties stipulated to a review of certain modules of their software by an expert in computer science, Dr. Todd Austin of The University of Michigan Department of Electrical Engineering and Computer Science.  The parties jointly prepared instructions for Dr. Austin to ensure that he focused on the elements of the source code that were protectable under intellectual property laws and not the elements which were, as a matter of law, unprotectable or otherwise irrelevant to Manatron's claim for copyright infringement.  This is critical in any case alleging copying, but even more so in cases alleging copying of software.  That is because copyright law does not protect many elements of software that are commercially valuable.

Dr. Austin concluded that there was nothing in the Manatron source code that was original to Manatron and copied by Nikish.  Indeed, Dr. Austin concluded "I was unable to find any relevant similarities between the RMS and MVP code bases."  Exhibit F at 5.

II.     FACTS

    A.     <u>**Background of the Dispute**</u>.

        1.     <u>The early relationship between the parties</u>.

For over twenty years, Mr. Kishin Bharwani, founder and CEO of Nikish Software Corporation ("Nikish") has been involved in financial software design, development, and deployment. In 2001, Manatron retained Nikish as a consultant to help Manatron perform on its contracts with a few software clients. Manatron and Nikish parted ways in 2004 on acrimonious terms.

        2.     <u>Nikish and Manatron compete for business in Indiana</u>.

In 2005, Nikish began to design and develop "RMS," its proprietary property tax management software (software used by counties to track taxes owing on residential, industrial, governmental, and commercial real estate parcels). Manatron, which had been a provider of property tax management software for many years, was concerned about this new competition.

On or about December 1, 2006, after Manatron learned that Nikish was marketing RMS 2.0 to Indiana counties, Manatron sent a letter to each of the Auditors of a majority of Indiana's counties. Manatron's December 1, 2006 letter asserted that Manatron had "credible evidence" that Nikish's RMS 2.0 was "nothing more than a misappropriated derivative copy of the Manatron MVP system" that Manatron marketed in Indiana. *See* Complaint at ¶ 18; Exhibit A. In its December 1, 2006 letter, Manatron defamed both Nikish as a corporation and Mr. Bharwani individually because it falsely asserted that Mr. Bharwani and Nikish committed illegal acts of theft and attempting to sell stolen property.

        3.     <u>Nikish files this action</u>.

On February 15, 2007, Nikish filed this action against Manatron for Tortious Interference with a Business and/or Contractual Relationship (Count 1); Defamation of Nikish Software

2

Company (Count 2); Defamation of Kishin Bharwani, individually and in his capacity as the President and Chief Executive Officer of Nikish Software Company (Count 3); and Breach of Contract (i.e. breach of the Release) (Count 4).

On April 20, 2007, Manatron filed an answer, which included affirmative defenses but no counterclaims.

### 4.   After considerable delay, Manatron files its counterclaim.

On September 15, 2008, almost one and a half years after Manatron filed its answer, defendant filed a motion for leave to assert a counterclaim for injunctive relief and damages. This Court granted Manatron leave to file its counterclaim.

Manatron's counterclaim contains ten counts:  Misappropriation of Trade Secrets (Count I); Breach of Contract (Count II); Unfair Competition (Count III); Common Law Copyright Infringement (Count IV); Breach of Fiduciary Duty/Confidentiality (Count V); Breach of Duty of Good Faith and Fair Dealing (Count VI); Tortious Interference with Contractual Relationships or Business Expectancy (Count VII); Unjust Enrichment (Count VIII); Deception (Count IX); and Conversion (Count X).

### B.   Manatron Alleges Nikish Copied MVP.

Manatron had never been a licensee of RMS, and thus had no direct experience with RMS software.  Manatron does not allege that it ever had such access to and use of RMS. Manatron had never seen RMS source code and thus had no firsthand knowledge as to whether any RMS code was copied from Manatron MVP code.  Indeed, Manatron does not allege that it ever had access to RMS source code and does not allege that Manatron source code was copied by RMS.

In paragraph 34 of its counterclaim, Manatron alleges only:

> Given the quick delivery turnaround time provided in the response
> to RFP, Manatron's knowledge of Nikish's operating structure and
> performance ability, the use of naming conventions, the use of
> former Manatron personnel intimately familiar with the MVP
> code, and Nikish's possession of the MVP code through its
> business dealings with Manatron, it was clear to Manatron that
> Nikish's RMS 2.0 was a derivative work of Manatron's MVP
> source code.

Counterclaim ¶ 34.

A "derivative work" has a very precise meaning in intellectual property law.  Under the

U.S. Copyright Act, 17 U.S.C. § 101 *et seq* (the "Copyright Act"):

> A "derivative work" is a work based upon one or more pre-existing
> works, such as a translation, musical arrangement, dramatization,
> fictionalization, motion picture version, sound recording, art
> reproduction, abridgment, condensation, or any other form in
> which a work may be recast, transformed, or adapted . . ..

Thus, for RMS to be a "derivative work," Manatron would have to prove that Nikish

copied MVP original authorship into RMS.

### C.    The Parties Retain an Expert Computer Scientist.

Nikish has always asserted that RMS is original to Nikish and contains no authorship of

Manatron.  After conferences with the Magistrate Judge, the parties submitted a Joint Discovery

Plan for Production of Source Code (Dkt. No. 79) that provided a framework for an expert

review of RMS, MVP, and a co-owned solution known as "Tax Claim."  In the Joint Discovery

Plan, the parties agreed that the expert's findings regarding similarity would be binding:

> 10. The Parties stipulate and agree that **any findings by the
> Expert regarding Similarity are findings of fact presumptively
> binding upon both parties** in the absence of clear error. Both
> Parties reserve the right to argue the legal significance of such
> findings including, but not limited to, under 17 U.S.C. § 102(b)
> and doctrines under copyright law that recognize that not all
> similarities are actionable, such as scenes a faire, standard software
> design and development conventions and practices, elements

4

> dictated by externalities, and the truth of the statements made by
> Manatron in its December 1, 2006 letter.

Joint Discovery Plan for Production of Source Code (Dkt. No. 79) at 6 (emphasis added).

After the parties submitted the Joint Discovery Plan, they selected an expert and finalized

instructions for the review.  *See* Order approving February 2, 2010 Joint Status Report Regarding

Plan for Source Code Expert Review (Dkt. No. 101).  Pursuant to the Magistrate Judge's Order

entered on March 19, 2010 (Dkt. No. 105), the parties agreed that Dr. Todd Austin, Professor at

The University of Michigan Department of Electrical Engineering and Computer Science, would

examine the source code for portions of MVP selected by Manatron, and the source code for

RMS' corresponding features and functions.

In his Expert Report, attached as Exhibit F,[2] Dr. Austin provides his relevant background:

> I, Prof. Todd Austin Ph.D., have more than 20 years experience in
> the design, implementation, and programming of high-
> performance, power-efficient, and cost-effective computing
> systems. I have published more than 100 papers on hardware and
> software technologies, including "The SimpleScalar Tool Set",
> which has been cited in thousands of references. I am also co-
> inventor of 15 patents. I am currently a Full Professor in the
> Department of Electrical Engineering and Computer Science at the
>
> University of Michigan in Ann Arbor. Prior to joining academia, I
> was a Senior Computer Architect at Intel's Microcomputer
> Research Labs, a product-oriented research laboratory in Hillsboro,
> Oregon. In 2002, I was a Sloan Research Fellow, and in 2007 I
> received the ACM Maurice Wilkes Award "for innovative
> contributions in Computer Architecture, including the
> SimpleScalar Toolkit and the DIVA and Razor architectures." I
> received a Ph.D. in Computer Science from the University of
> Wisconsin, Madison in 1996.

Exhibit A, Expert Report of Prof. Todd Austin, at 1.

---

[2] Exhibit F contains materials that have been redacted under an agreement by the parties that the
redacted material is "Confidential" per the Protective Order entered on August 11, 2008 (Dkt.
No. 37).

**D.**      **The Parties Agreed Upon Instructions to the Expert.**

Dr. Austin was chosen to assist the Court in answering the threshold question:  did Nikish copy original expression of Manatron?  If there was no copying of any original authorship of Manatron, there could be no copyright infringement by Nikish.  As an expert, Dr. Austin was competent to analyze computer source code, follow instructions agreed upon the by parties, exclude certain kinds of similarities as legally irrelevant, and conclude whether or not Nikish copied original expression from MVP.

This was reflected in the joint instructions to the expert that were developed and agreed upon by Nikish and Manatron.  *See* Exhibit E.  These instructions were restated in Dr. Austin's report:

> **PURPOSE OF REVIEW.**  The parties wish to have an expert determine whether the software developed by Nikish Software Corporation and known as "RMS" is original to Nikish, or whether it embodies creative expression owned by Manatron, Inc. in its "MVP" software.
>
> **PURPOSE OF INSTRUCTIONS.**  U.S. copyright law protects certain content, but does not protect all content.  Indeed, some workproduct is not protected at all (for example, a computer program that loads toner into a printer cartridge), because it is merely information, processes, and procedures) whereas other content is granted broader protected (for example, a computer program that is a game containing characters, plot, dialog, visual elements, and music).
>
> These instructions provide you, the expert, with a framework or "checklist" of elements of computer programs that are NOT protected by copyright law. Thus, when you compare the module of RMS and the module of MVP and find "similarities," and if the "similarities" fall into any of the categories below, then those "similarities" are not relevant.
>
> 1.      Examples of Content that is not Entitled to Copyright Protection.  Here are examples of content that are excluded from copyright protection:

- Facts

- Data

- Unoriginal (standard, typical, ordinary) collections of facts or data

- Opinions

- Ideas

- Concepts

- Principles

- Processes

- Procedures

- Functions

- Systems

- Methods of operation

- Discoveries

- Algorithms

- Features, functions, and elements that can be written in just a few different ways (copyright does not permit a monopoly on expression)

- Content due to external requirements or constraints:

  ○ hardware requirements

  ○ programming language

  ○ database design

  ○ data handling requirements

  ○ efficiency

  ○ legal requirements

  ○ requirements from customers (as set forth in an RFP, for example)

  ○ good design practices

  ○ standard software practices

7

- ◦ increased stability of product

- ◦ market requirements

- Computer programs that are very short and are designed solely for the purpose of efficiently accomplishing a specific function (for example, loading toner into a printer cartridge)

- A computer model comprised of numerous datapoints gathered from the object being modeled

- References and Citations

- Quotations

- Titles

- Recipes and cooking instructions

- Simple maps, intended to accurately reflect factual information

2.      Other Excluded Similarities**.**  Pursuant to a contract between Nikish Software Corporation and Manatron, Inc., the companies co-own intellectual property rights in certain software, referred to by the parties as "Tax Claim."  Intellectual property rights that are co-owned cannot be the subject of any claims of infringement or misappropriation between the two companies. Their co-ownership extends to all elements of Tax Claim, including (but not limited to) the following:

- User Interface /"look and feel"

- Process flow

- Database

- Table definitions

- Data tables

- Reports

- Data access methodologies, and

- Data routines

3.      Relevant Similarities.  There are many other elements of workproduct not protected by copyright law, but these are the most

8

> relevant to software.  As the U.S. Supreme Court said, it can seem
> unfair that copyright does not protect elements of software that are
> valuable, either because they involve intellectual insight (even
> brilliance), expenditure of resources, advanced education, market
> research, and great skill.  Many of these elements are protected by
> other legal doctrines, such as patent or trade secret.  They are not,
> however, protected by copyright.
>
> Thus, you, as the expert, should identify only those similarities that
> are "authorship" - meaning, similarities that do not arise from
> logic, function, good design, standard software practices, external
> constraints, and the like.

Exhibit F at 15-17.

Additionally, as noted by Dr. Austin, similarities resulting from the requirements of

Indiana law were not considered relevant similarities (for the reasons set forth above):  "I

reviewed the 'State of Indiana Computer Standards'…which establishes standards for software

used in Indiana to assess property taxes.  Any similarities between RMS and MVP that are

required by Indiana's established standards will not be considered a relevant similarity."  *Id*. at

19.

The State of Indiana enacted 50-IAC 23-1 to accomplish several goals, including "To

attain uniformity in property tax administration practices through the use of functionally

equivalent computer systems in each county in the state."  Those computer standards, attached to

the Expert Report as Schedule C, address an extraordinarily wide range of features and functions

that are required in all tax management software licensed to Indiana counties.  Every vendor of

tax management software in Indiana is required to include certain features and functions, and

thus the inclusion of those features and functions is an "externality" not evidence of the copying

of original expression.

**E.**     **The Expert Reviewed the Parties' Source Code.**

In his Expert Report, Dr. Austin stated "I examined three code bases in performing this study.  The Nikish RMS Indiana source code ("RMS") was supplied to me by Nikish Software Corporation.  This code base was studied to determine if any relevant similarities exist between it and Manatron's source code.  I also examined the Manatron MVP Tax Indiana source code ("MVP"), supplied to me by Manatron Incorporated."  Exhibit F at 1.

Dr. Austin also examined software referred to as "Tax Claim," in which the intellectual property rights are co-owned by Nikish and Manatron, as Nikish is free to use the intellectual property rights in software owned by it, co-owned by it, or licensed to it.  Further, Dr. Austin considered the "State of Indiana Computer Standards." *See id*. at 2.

**F.**     **The Expert Found No Relevant Similarities.**

Dr. Austin concluded that there were no relevant similarities between RMS and MVP:

> In summary, I was unable to find any relevant similarities between the RMS and MVP code bases.  While a few overarching similarities do exist between the two code bases e.g., object-oriented programming style, use of decimal arithmetic, and incorporation of a database backend with an SQL interface), these similarities are indicative of many business-oriented applications. The differences between the applications (e.g., use of different programming languages, employment of different code organizations and different levels of code factoring) provided more insights, suggesting that the two code bases do not have shared authorship.  In examining individual source code files in the RMS system, the majority of the files implement simple data routines, user interface, or functionality that could not be located in the MVP code base.  The remaining files implement functionality contained in the MVP code base, but in all cases the two implementations are markedly different, to the extent that in most cases what is contained in one file in the RMS code base is spread over many files in the MVP code base.

*Id*. at 13-14.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is a no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  *Celotex Corp. v. Catreet,* 477 U.S. 317, 327 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but instead must set forth specific supported facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Here, even when the evidence is viewed in the light most favorable to Manatron, plaintiffs are entitled to summary judgment as a matter of law.

### IV.    ARGUMENT

#### A.    **Manatron's Claim for Common Law Copyright Infringement Is Preempted By the Copyright Act Because "Common Law Copyright Infringement" Claims Have Been Abolished**

Count IV of Manatron's Counterclaim alleges "common law copyright infringement" by Nikish.  As Nikish previously argued in its brief in support of its Motion for Judgment on the Pleadings (Dkt. No. 74), this count is preempted by the Copyright Act.  This Court denied Nikish's motion for judgment under Fed. R. Civ. P. 12(c), finding "that the particular issues raised are best addressed on a motion under FED. R. CIV. P. 56 for summary judgment."  Order (Dkt. No. 99) at 2.  This issue is now ripe for review as a result of Dr. Austin's findings, and this Court should grant Nikish partial summary judgment of Count IV of the Counterclaim.

Before the enactment of the Copyright Act, there was a dual system of copyright protection in the United States – federal statutory and state common law copyright protection. *See Baltimore Orioles, Inc. v. Major League Baseball Players Asso.*, 805 F.2d 663, 678 n.20 (7th

Cir. Ill. 1986) (citations omitted).  Indeed, prior to the Copyright Act, several states, including

Indiana, had an entire body of common law pertaining to copyright alongside federal copyright

law.  *Id.*  Since the enactment of the current version of the Copyright Act, however, the Seventh

Circuit has recognized that the Copyright Act has specifically eliminated the need for common

law copyright claims, and, therefore, such claims are explicitly preempted under Section 301 of

the Copyright Act.  *Id.*; *See also* 17 U.S.C. § 301 (2009).

In its claim for "common law copyright infringement", Manatron alleges that Nikish

"without permission or consent of Manatron, has used the MVP source code…to create a

derivative work."  Counterclaim at ¶ 68.  Moreover, Manatron  asserts that through Nikish's

"continuous and ongoing acts of copying and reproducing the MVP source code and other

confidential and proprietary information, Nikish has violated Manatron's exclusive ownership

rights to reproduce the MVP source code, to prepare derivative programs based on the MVP

source code, and to distribute copies of the source code." *Id*. at ¶ 69.  These claims are based

upon alleged rights equivalent to those set forth in Section 106 [17 USC § 106] of the Copyright

Act.  Section 106 recognizes six rights of copyright holders:  (1) the right to reproduce the

works; (2) the right to prepare derivative works; (3) the right to distribute copies of the works;

(4) the right to publicly perform the works; (5) the right to the right to publicly display the

works; and (6) the right to perform the works by means of a digital audio transmission

(applicable only to sound recordings).  17 U.S.C. § 106 (2009); *See also Toney v. L'Oreal USA,*

*Inc.*, 406 F.3d 905, 909 (7th Cir. Ill. 2005).   Manatron  is attempting to assert a claim for

"common law copyright infringement", yet its claim is based upon rights identical to those

provided by the Copyright Act and are explicitly preempted by the Act.  Analysis under the

Copyright Act, therefore, is dispositive of Manatron's claims under Count IV.

**B.** **Nikish Did Not Copy Any Original Expression.**

In his Expert Report, Dr. Austin sets out the methodology for his conclusion that he was unable to find any relevant similarities between the RMS and MVP. Manatron was free to select whichever features and functionality of MVP it thought was most likely to support its allegations. Nikish then provided Dr. Austin its source code directed to those same features and functions. Dr. Austin compared the source code of the parties at the architectural level and at the line-by-line source code level. There was nothing original to Manatron appearing in RMS.

Dr. Austin did note that MVP and RMS contained common features. The similarities were all due to design practices and techniques common in the field of software programming.[3] As explained by Dr. Austin:

> While inspecting the RMS and MVP code bases, the code bases revealed a number of overarching similarities:
>
> • Both code bases utilize an object-oriented programming style, the RMS code base to a great extent, and the MVP code base to a moderate extent. An object-oriented programming style is a technique used to organize code around critical data structures. The technique is widely used in programming, and it is commonly employed in business-oriented applications.
>
> • Both code bases make heavy use of decimal arithmetic. Decimal arithmetic encodes numbers as a sequence of digits, as opposed to floating-point arithmetic, where numbers encode pre-defined locations on the rational number line. Decimal arithmetic is heavily used in business-oriented applications because it can precisely encode currency values, reducing the occurrence of money being lost to arithmetic rounding errors.
>
> • Both applications utilize a database backend with an SQL interface. A database backend is a separate program, sometimes even hosted on another server, which stores

---

[3] Although the two codes contained common features that can not be the basis of an infringement claim, there is no evidence that Nikish copied <u>any</u> code found in MVP.

> critical program data. Both applications access their databases using the SQL interface language. SQL is an interface language that makes it efficient to express queries to a database. The use of a database backend with an SQL interface is very common in business-oriented application.
>
> Given the likelihood of the occurrence of these program methodologies in business-oriented programs like RMS, I do not classify any of these overarching similarities as relevant similarities.

Exhibit F at 3.

"Widely used," "commonly-employed," heavily used," "very common," and not "relevant." This is how Dr. Austin describes the similarities between MVP and RMS, whether at the literal level or the architectural level of the software. His methodology follows the "abstraction-filtration-comparison" often used by courts to find the "golden nugget" of creative expression in computer software only after stripping out all the unprotectable elements (of which there are many). *See, for example, Computer Associates International, Inc. v. Altai, Inc.,* 982 F.2d 693 (2nd Cir. 1992).

As the U.S. Supreme Court declared twenty years ago, "The *sine qua non* of copyright is originality." *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340 (1991). "The originality requirement  . . . remains the touchstone of copyright protection today. . . . It is the very 'premise of copyright law.'"  *Id.* at 347 (internal citations omitted).   "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Id.* at  361.

Manatron's failure to meet this basic requirement under copyright law is not surprising, as copyright law does not protect much of what is valuable in computer-based engineering.  The U.S. Copyright Act, even as it expressly protects the creative expression in literary works, musical works, sound recordings, dramatic works, choreographic works; pictorial, graphic, and

sculptural works; motion pictures and audiovisual works, and architectural works, 17 U.S.C. § 102(a), <u>expressly prohibits</u> protection for factual, intellectual, engineering, scientific, and technology-related elements of works:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b).

Two years of litigation has failed to generate any evidence supporting the copying or original authorship by Nikish. According to Dr. Austin's findings, binding upon the parties as to the issue of similarity, Manatron has failed to meet this threshold requirement of U.S. copyright law. Nikish is entitled to summary judgment as to the issue of the copying of original authorship.

### C.   This Court Should Grant Nikish Summary Judgment of All Counts of the Counterclaim

Every applicable count of Manatron's Counterclaim somehow relates to Nikish's alleged reproduction, preparation of derivative works and/or distribution of the MVP source code:

> • In its misappropriation of trade secrets claim (Count I), Manatron alleges that Nikish "had access to Manatron's Confidential information, specifically its MVP source code." Counterclaim at ¶ 40. Manatron then alleges "Nikish misappropriated the MVP source code it had access to . . ." and ". . . developed the RMS 2.0 using Manatron's confidential trade secret information, [therefore] Manatron is the rightful owner of the RMS 2.0 as it was derived using Manatron's proprietary MVP source code." *Id.* at ¶¶ 43, 45.

> • In its breach of contract claim (Count II), Manatron alleges that Nikish has "used confidential and proprietary Materials and Deliverables to develop a software program, the RMS 2.0 (an illegal derivative of Manatron's MVP source code), which Nikish marketed to state and local governments in direct competition with Manatron . . ." *Id.* at ¶ 57(b). Manatron also alleges in the breach

15

of contract claim that Nikish used "Manatron's confidential information to the detriment of Manatron and/or to the benefit of Nikish" and used "Manatron's confidential information for personal/corporate gain." *Id*. at ¶ 57(d), (f). Manatron also alleged that Nikish "Usurp[ed] business/sales opportunities from Manatron." *See id.* at ¶ 57(e).

- In its unfair competition claim (Count III), Manatron argues that Counter-defendants have "misappropriated [Manatron 's] trade secrets and confidential information to develop the RMS 2.0 product. It is also marketing and has sold this product to current and potential customers of Manatron . . .." *See id.* at ¶ 62.

- In its breach of fiduciary duty claim (Count V), Manatron alleges that Nikish has breached duties to Manatron by "Competing with Manatron by misappropriating Manatron's confidential and proprietary information to develop the RMS 2.0 product" and "Soliciting Manatron's current and potential customer base with a misappropriated illegal derivative copy of the MVP source code - - the RMS 2.0 product." *See id.* at ¶¶ 75(a) and (c).

- In its breach of the duty of good faith and fair dealing claim (Count VI), Manatron alleges that Nikish has breached duties to Manatron by "Developing the RMS 2.0 product, an illegal derivative of Manatron's MVP source code, during the pendency of its contractual relationship with Manatron." *See id.* at 81(b).

- In its tortious interference claim (Count VII), Manatron alleges that Counter-defendants "utilize[ed] or disclos[ed] [Manatron 's] confidential and proprietary information to develop the RMS 2.0." *Id*. at ¶ 86.

- In its unjust enrichment claim (Count VIII), Manatron alleges that Counter-defendants enjoyed valuable benefits as a result of their "access to [Manatron 's] confidential and proprietary information." *Id*. at ¶ 89.

- In its deception claim (Count IX), Manatron alleges that "Nikish, with the intent to defraud, misrepresented the source and quality of the RMS 2.0 product as its own, knowing that the RMS 2.0 is an illegal derivative of Manatron's MVP source code." *Id*. at ¶ 95.

- In its conversion claim (Count X), Manatron alleges that Counter-defendants "used [Manatron 's] confidential and

16

proprietary information, namely its MVP source code, to create an illegal derivative copy." *Id.* at ¶ 99.

In addition to nullifying Manatron's copyright claim, Dr. Austin's findings conclusively refute each of the bases above for Manatron's claims of trade secret misappropriation, breach of contract, unfair competition, breach of fiduciary duty, breach of the duty of good faith and fair dealing, tortious interference, unjust enrichment, deception, and conversion. This Court, therefore, should grant Nikish summary judgment of all counts of Manatron's counterclaim.

## IV.    CONCLUSION

Mr. Kishin Bharwani and Nikish request that this Court grant their motion for summary judgment of Manatron's Counterclaim, and award Defendants their attorneys' fees and costs under 17 U.S.C. § 505.

Respectfully submitted,

s/ G. Christopher Bernard
BODMAN LLP
201 South Division Street, Suite 400
Ann Arbor, MI 48104
(734) 930-2482
cbernard@bodmanllp.com
(P57939)

July 9, 2010                                        Attorneys for Plaintiffs/Counter-defendants

17

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

J. Lee McNeely
James Dimos
Joel E. Tragesser
Brady J. Rife
Richelle Marie Harris

Respectfully submitted,

s/ G. Christopher Bernard
BODMAN LLP
201 South Division Street, Suite 400
Ann Arbor, MI 48104
(734) 930-2482
cbernard@bodmanllp.com
(P57939)

July 9, 2010                               Attorneys for Plaintiffs/Counter-defendants

AnnArbor_176210_5