**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NIKISH SOFTWARE CORPORATION and KISHIN BHARWANI, | ) | CASE NO. 1:07-cv-00358-TWP-MJD |
| Plaintiffs, | ) | |
| v. | ) | |
| MANATRON, INCORPORATED, | ) | |
| Defendant. | ) | |
| MANATRON, INCORPORATED, | ) | |
| Counter-Plaintiff, | ) | |
| v. | ) | |
| NIKISH SOFTWARE CORPORATION and KISHIN BHARWANI, | ) | |
| Counter-Defendants. | ) | |

**MANATRON'S RESPONSE IN OPPOSITION TO NIKISH'S**
**MOTION FOR ATTORNEYS' FEES AND EXPENSES**

In discussing the Seventh Circuit presumption for reimbursement of its attorneys' fees, Nikish cites to *Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008) and correctly notes that *Riviera* cites *Woodhaven Homes & Realty, Inc. v. Hotz*, 396 F.3d 822, 824 (7th Cir. 2005). Nikish failed to acknowledge, however, that *Riviera* also relies on *Assessment Technologies of Wisconsin, LLC v. WIREdata, Inc.*, 361 F.3d 434 (7th Cir. 2004), an opinion interpreted by the Southern District of Indiana in *Traicoff v. Digital Media, Inc.*, 2007 WL 2286133 (S.D.Ind. August 7, 2007). In *Traicoff*, Judge Tinder specifically noted that "[t]he court does not take *Assessment Technologies* to require in every case a sanction on a losing plaintiff

who in good faith sought its day in court." *Traicoff* at *3. The Northern District of Indiana reached the same conclusion in regards to the presumption, denying an attorneys' fee claim by the prevailing plaintiff in *Janky v. Lake County Convention & Visitors Bureau*, 2007 WL 2413021 (N.D.Ind. August 20, 2007). Both of these Indiana cases reject a rote application of the presumption and reiterate the principle stated in *Assessment Technology*: "[t]he two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." *Assessment Techs.*, 361 F.3d. at 436.

Manatron did not file this lawsuit and, in fact, Fed.R.Civ.P. 13(a) mandated the filing of compulsory counterclaims. Rather than multiply the proceedings, Manatron agreed to suspend discovery and the lawsuit pending a review of the parties' source code. Nikish has filed and not prevailed on various dispositive motions and objections, while Manatron has not filed multiple dispositive motions regarding the counterclaim. Nikish failed to win summary judgment on Manatron's unfair competition counterclaim. Instead, Nikish prevailed on summary judgment on the copyright infringement counterclaim only after a computer expert finally compared the parties' computer source code. Lastly, as Nikish did not enlarge the public domain by obtaining summary judgment, it has not obtained the relief that supports the presumption for prevailing defendants to receive fees and costs under 17 U.S.C. § 505.

Nikish argues that "Manatron had no evidence of any copying by Nikish." *Nikish's Brief in Support of Motion for Attorneys' Fees and Expenses*, p. 1 (Docket No. 142). But there is no direct evidence of copying in most copyright cases. *Celebration Intern., Inc. v. Chosun Intern., Inc.*, 234 F.Supp.2d 905, 917 (S.D.Ind. 2002) ("However, copyright infringement may be inferred when it is shown that 'the defendant had access to the copyrighted work, and the

accused work is substantially similar to the copyrighted work.'" (citation omitted)). As explained in Manatron's Memorandum in Opposition to Nikish's Motion for Summary Judgment, Nikish's access to Manatron's work is not disputed, and Manatron submitted evidence of substantial similarity (Docket No. 132, pp. 25-27). While ultimately not successful on summary judgment, Manatron proceeded in good faith as it sought its day in court on this disputed issue. Nikish has not submitted any evidence that Manatron has pursued its counterclaims in bad faith.

Besides not being justified, Nikish's request for fees and expenses is severely flawed. Nikish has made a *carté blanch* request unrelated to tasks defending the copyright infringement counterclaim. Because it attempts to recover fees and expenses incurred in prosecuting its Complaint against Manatron and for other unrelated activities and cases, Nikish's request is excessive and unreasonable.

Finally, any award of fees and expenses under 17 U.S.C. § 505 should be addressed at the end of the lawsuit, not upon an interim summary judgment ruling on less than all of the disputed claims and counterclaims. Nikish is not entitled to an interim award of fees and expenses under 17 U.S.C. § 505.

**A. This case does not pit David versus Goliath.**

Nikish repeatedly claims, without evidentiary support, that it is a small company with limited resources. *Nikish's Brief in Support of Motion for Attorneys' Fees and Expenses*, pp. 1, 3-4, 17. Nikish makes unsubstantiated statements exaggerating the size of Manatron as well. This rhetoric creates a misimpression that is immaterial in our American legal system and one prejudicial to the application of the actual facts to the applicable law in this matter. In *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 198 F.3d 840, 842-843 (11th Cir. 1999), the Court vacated the district court's award of attorney's fees and stated:

> It is unsurprising that no case law supports the proposition that a difference in financial wealth, in and of itself, is sufficient to justify imposition of attorney's fees under § 505. The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, i.e., by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure "that the boundaries of copyright law [are] demarcated as clearly as possible" in order to maximize the public exposure to valuable works. *Fogerty*, 510 U.S. at 526-27, 114 S.Ct. at 1029-30 (discussing the varied goals of the Copyright Act); see also *Lotus Dev.*, 140 F.3d at 75 ("When close infringement cases are litigated, copyright law benefits from the resulting clarification of the doctrine's boundaries. But because novel cases require a plaintiff to sue in the first place, the need to encourage meritorious defenses is a factor that a district court may balance against the potentially chilling effect of imposing a large fee award on a plaintiff, who, in a particular case, may have advanced a reasonable, albeit unsuccessful, claim.").

Nikish was incorporated in New York in 1984 and has been in business for more than 25 years. It is not a nascent company struggling to survive. In its own Vendor History, Nikish describes its first work for Nassau County, New York (450,000 parcels) and York County, Pennsylvania (150,000 parcels) and then stated:

> After this Nikish Software began to start servicing Wall Street firms and Fortune 500 companies, providing them with PeopleSoft Human Resource Software. We supplied Human Resource and Payroll solutions to the following companies: Goldman Sachs N.Y., Morgan Stanley, Diageo Plc (UK), Warburg Dillon Read (The investment banking division of Swiss Bank Corporation), and Siemens plc where we were the sole implementation partner and we implemented a system at all 15 Siemens UK Companies.[1]

In fact, Nikish does not hold itself out as a fledging, start-up company when responding to Requests for Proposals ("RFPs") but touts its long history, multiple offices, and success working with large entities. For instance, Nikish represented to various counties in Indiana that:

> Nikish Software was founded in 1984 and has a long history of servicing government vertical market in the areas of CAMA

[1] Attached as Exhibit A.

> (Computer Assisted Mass Appraisal) and Tax Systems. Our offices are located in Long Island, New York and Indianapolis, Indiana.

*Response to Tippecanoe County's RFP*[2], p. 12; *Response to Vigo County's RFP*, p. 4.[3]

Nikish also boasts the experience and specialization of its employees in its Response to Vigo County's RFP, including the following individuals:

> **Kishin Bharwani**
>
> **President – Technical Architect**
>
> With 25 years in systems implementation, Kishin is the president of Nikish Software Corp (www.nikish.com) and specializes in all facets of systems deployment including Requirement definition, System Architecture, Software Development, Quality Assurance, Data Conversion and Training. He has served local governments in full life cycle deployment of Property Tax and CAMA Systems for Residential and Commercial properties. Current projects include a browser based Real & Personal Property Tax development using Microsoft .net platform with embedded business intelligence (OLAP) modules.
>
> As Vice President of Goldman Sachs & Company he was responsible for deploying PeopleSoft Globally and was consultant to other Wall Street companies including Morgan Stanley, UBS (Warburg Dillon Reed) and Siemens.
>
> Member: AICPA, NYCPA, IAAO.
>
> Education: Ohio State University, Columbus OH1980
>
> Computer Science & Accounting
>
> **Anil (Neil) Pandeya**
>
> **Vice President - Operations**
>
> Neil is an accomplished professional with over 25 years of managerial experience of which 18 years have included software development system design and project management. For the last 3 years he has managed, designed, developed and implemented large projects in the area of Property Tax and Revenue

[2] Attached as Exhibit B.
[3] Attached as Exhibit C.

Management. He has experience as a CTO/ V.P. Operations of eCRM and Software development organizations, center manager for project development center, project manager for OO/ RDBMS/ Internet/ Intranet, system conceptualist and business analyst, Web System Designer and developer. Most recently, Neil was responsible for timely development of project deliverables of a property management project for City of Baltimore. Previously, Neil managed eCRM project for NY State where Annexio deployed the Virtual Contact Center for State of NY, WCB operation post 9/11. Earlier he was employed by Perot Systems where he managed a comprehensive development program for Swiss Bank, London. He served as Chief of Operations for Web Soft Technologies, India, where he managed a project to develop a healthcare related internet/intranet system for use by physicians. Neil has exposure to and experience with a variety of hardware systems, operating systems, programming languages, database development tools and communication protocols. Neil received a Bachelor of Engineering from National Institute of Technology and a Master of Technology from the Indian Institute of Technology.

**Larry J Tonander**

**Project Manager**

Over 25 years of extensive experience managing large Technology departments, comprised of operations, application development, technical service and marketing/sales environments with staff sizes ranging from 30 to 200 professionals. Member of decision-making team with proven ability in cost reduction, operational troubleshooting, and functional integration.

He was a Senior Manager, responsible for oversight of Project Management Offices (PMO's) for a COTS (Commercial off the shelf), Government Property Tax Deployment Technology Company. His responsibilities included deployment of the formal methods of PMI's PMBOK – including, Initiating, Planning, Executing, Controlling and Closing the Process. He posses [sic] a solid understanding of the definition, application and deployment of various Software Development Life Cycles (SDLC's), Architecture/Infrastructure Strategic Planning, Quality Assurance and Testing Processes (including Quality Metrics), Enterprise-wide Client/Server Methodology, and Web Development

(pp. 9-10).

Nor does Nikish have limited financial resources. In fact, Nikish filed a declaration of Mr. Bharwani in this case stating: "It has taken millions of dollars and thousands of person-hours to develop RMS." (Docket No. 125-1, ¶9, p.3). Nikish's pleas of bullying and poverty ring hollow in light of its representations to customers and this Court.

**B. The presumption of entitlement to fees and expenses is rebutted because Manatron honestly and reasonably believed that there was infringement in this case and because Nikish has not enlarged the public domain.**

In *Traicoff*, the Court refused to amend its previous denial of the prevailing defendants' Petition for Attorney's Fees. The defendants argued that Judge Tinder misapplied Seventh Circuit case law when denying their petition pursuant to 17 U.S.C. § 505. But the Court upheld its denial and stated:

> Judge Posner further refined the Circuit's guidance on the standard for awarding attorneys' fees by stating: "The two most important considerations in determining whether to award attorneys' fees in a copyright case are the strength of the prevailing party's case and the amount of damages or other relief the party obtained." [*Assessment Techs.*, 361 F.3d at 436]. The court cited the presumption in favor of fees expressed in *Gonzales* and noted that in the case of a defendant "who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong. For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights." Id. at 437.
>
> Defendants argue that Plaintiff has not overcome the "very strong" presumption in favor of an award of attorneys' fees to Defendants. The court disagrees. It was with the standard set forth in *Assessment Technologies* that this court denied the petition for attorneys' fees.
>
> ***
>
> But this is not a case where Plaintiff aimed at extortion at the expense of the public domain. Plaintiff honestly and reasonably believed that there was infringement in this case. He came armed with a supporting case from the United States Court of Appeals for the Ninth Circuit, a contract with the defendant, and no case law in the Seventh Circuit against him. There was no reason to believe

> that Plaintiff, like plaintiff in *Assessment Technologies*, was "transparently seeking to annex a portion of the intellectual public domain" or that his behavior came close to copyright misuse. *Assessment Techs.*, 361 F.3d at 437. Where, as here, the case involves two parties with different, but reasonable, views of the law with an uncertain outcome there is little risk that one of them will use the high cost of litigation to thwart established copyright law and policies. **The court does not take *Assessment Technologies* to require in every case a sanction on a losing plaintiff who in good faith sought its day in court.**[FN4] [emphasis added]
>
> FN4. Additionally, Defendants fight not "to obtain nonexclusive access to the intellectual public domain," *Assessment Techs.,* 361 F.3d at 436, but to interpret their exclusive contractual rights with Plaintiff. (Defendants also argued that Plaintiff did not have intellectual property in the material at issue; yet, to the extent that Plaintiff did not have a copyright, Defendant Digital Media did. Further, it was on the contractual ground that the court found for Defendants.) Therefore, the public's interest in Defendants' defense in no greater than in any [sic]

Manatron likewise honestly and reasonably believed that there was copyright infringement in this case. It is undisputed that Nikish had and continues to have access to Manatron's MVP source code. In fact, Nikish's responses to RFPs suggested that its RMS software was based upon and substantially similar to Manatron's MVP software. *See Manatron's Memorandum in Opposition to Nikish's Motion for Summary Judgment*, pp. 10-13, and *Affidavits of G. William McKinzie and Marty Ulanski* (Docket Nos. 132-1 and 132-3).

Without direct evidence, copying may be inferred by access and similarity. *Celebration Intern.*, 234 F.Supp.2d at 917. Dr. Austin's conclusion in June 2010 that no similarities exist does not mean Manatron's belief was dishonest or unreasonable, especially because Manatron was not able to review or analyze the RMS source code as Dr. Austin was able to do. And it cannot be said that Manatron initiated this lawsuit to thwart competition because ***Nikish*** is the

party that filed the Complaint. Rather, Manatron was asserting a compulsory counterclaim in accordance with Fed.R.Civ.P. 13(a)[4].

Nikish has not enlarged the public domain by obtaining summary judgment on Manatron's copyright infringement counterclaim because Nikish does not allow third parties to use its proprietary RMS software. Nikish refused to disclose its source code to Manatron and does not make its source code available to the public. No public users in the public domain have benefitted from this Court's summary judgment ruling, holding that Manatron failed to establish Nikish's RMS software infringed Manatron's MVP software (Docket No. 139). It did not rule that Manatron's MVP software lacked protection as a copyright or trade secret so is now part of the public domain to be freely used by all. As was also noted in *Traicoff*, users of the public domain have not gained the right to use Manatron's MVP so Nikish has not obtained the public relief necessary to support an award of its fees and expenses as a prevailing defendant. *Cf. Eagle Services Corp. v. H2O Industrial Services, Inc.*, 532 F.3d 620 (7th Cir. 2008) ("This case is atypical, because the defendants did not succeed in forcing the plaintiff's manuals into the public domain. But there is nothing in the cases to suggest that the thumb is to be taken off the scales only when a defendant by his successful defense enlarges the public domain.")

Also, this Court's Entry on Motion for Summary Judgment did not dismiss all of Manatron's counterclaims. Many of the acts that serve as the basis for Manatron's unfair competition counterclaim were also indirect evidence of unauthorized copying of Manatron's software. Because Manatron's unfair competition counterclaim survived summary judgment, these grounds cannot be considered frivolous, in bad faith, or merely used to stifle competition, even though Manatron's copyright infringement counterclaims ultimately did not survive

[4] Nikish's reliance on *JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339 (7th Cir. 2007) is misplaced because it addressed whether a prevailing plaintiff could recover *appellate* attorney fees, expenses, and costs.

summary judgment. *See Berkla v. Corel Corp.*, 302 F.3d 909, 924 (9th Cir. 2002) ("[Berkla] lost on summary judgment, but that does not mean that his claim was objectively unreasonable—in fact, the district court conceded that Berkla's work contained protectable expression and that, although not virtually identical, Corel's Photo Paint images were substantially similar to Berkla's.").

This lawsuit began with allegations of tortious interference with prospective business relationships, defamation, and breach of contract. Nikish filed the Complaint, and Manatron has reasonably defended Nikish's allegations while pursuing compulsory counterclaims. Manatron agreed to suspend this lawsuit pending Dr. Austin's analysis of the parties' source code, rather than engage in lengthy discovery battles. It refrained from other discovery and has not unnecessarily multiplied the proceedings by filing unreasonable motions.

Nikish attempts to posture Manatron's compulsory counterclaims as a pretext to stifle competition are not credible. *Yankee Candle Company, Inc. v Bridgewater Candle Company, LLC*, 140 F.Supp.2d 111 (D. Mass 2001), *Eagle Services Corp.*, 532 F.3d 620, and *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70 (2nd Cir. 1986), are distinguishable on the grounds that (i) Manatron did not bring this lawsuit, (ii) Manatron has not employed "egregiously aggressive litigation tactics" as noted in *Yankee Candle Company*, (iii) Manatron's unfair competition counterclaim survived summary judgment so cannot be considered bad faith as was found in *Universal City Studios, Inc*,. which addressed attorney's fees under the Lanham Act, and (iv) Nikish is an established company doing business with large Fortune 500 entities with millions of dollars in resources, not a fledgling upstart. Nikish did not submit any evidence to support a finding of bad faith on the part of Manatron. Manatron is entitled to an Order

denying Nikish's request because honestly and reasonably believed that there was infringement in this case, which rebuts the presumption for reimbursement.

**C. Nikish's claim for fees is excessive and severely flawed because they were neither carefully calculated nor conscientiously measured.**

"As with all fee petitions, the moving party has the burden of demonstrating that its fee request is reasonable." *Randolph v. Dimension Films*, 634 F.Supp.2d 779, 793 (S.D.Tex 2009), citing *Hensley v. Eckerhart*, 461 U.S. 424 at 437, 103 S.Ct. 1933 (1983) and *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The Court in *Randolph* addressed the number of hours expended by defendants' counsel and stated:

> A fee application should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir.1998). "Hours that are excessive, redundant, or otherwise unnecessary" are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application. *Hensley*, 461 U.S. at 433-34, 103 S.Ct. 1933 (internal quotations and citations omitted). The court may also exclude hours from the lodestar calculation that were not properly documented. *See id.*

*Randolph*, 634 F.Supp.2d at 798. "In evaluating a fee request, the starting point is the lodestar amount, the hours reasonably devoted to the matter, multiplied by a reasonable hourly rate, typically measured by the hourly rate the attorney receives for comparable work on a non-contingent basis." *Lemieux v. Guy*, 2006 WL 362655 at *2 (S.D.Ind. Nov. 20, 2006), *citing Hensley*, 461 U.S. at 433-34; *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992) (barring multiplier for contingent nature of fees). While the applicable billable hourly rates are high (ranging from $405 for partner, Ms. Kornfield, to $135 for paralegal, Ms. Cox), the amount of time spent by Bodman LLP does not reflect high efficiency. *Declaration of Susan M. Kornfield*,

p. 4 (Docket No. 142-1). "A high hourly rate that reflects such expertise should be paralleled by high efficiency." *Lemieux*, 2006 WL 362655 at *2.

The Seventh Circuit in *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 607 (7th Cir. 1982), affirmed a district court's refusal to make an award of attorney's fees and stated:

> District courts have broad discretion in making attorney's fee awards. *Mirabal v. General Motors Acceptance Corp.*, 576 F.2d 729, 730 (7th Cir. 1978). This is because "(t)he trial judge is in the best position to assess the skill and competence of counsel, the novelty or difficulty of the case, the benefits of the result achieved, and the reasonableness of the time counsel devoted to the case." *State of Illinois v. Sangamo Construction Company*, 657 F.2d 855, 862 (7th Cir. 1981). In exercising this discretion, the court may properly rely on its own experience to estimate the time reasonably required for the work claimed. *Boe v. Colello*, 447 F.Supp. 607, 610 (S.D.N.Y.1978). It may properly reject unsatisfactorily supported claims of attorney's time and also consider whether an "attorney, by pressing questionable claims and refusing to settle except on outrageous terms, could force a defendant to incur substantial fees which he later uses as a basis for his own fee claim." *Mirabal*, supra, at 731. Finally, this court has recognized that a district court, in the exercise of discretion, may properly deny attorney's fees entirely. In *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980), we held that "(s)uch denial is an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees." *See also Muscare v. Quinn*, 680 F.2d 42 (7th Cir. 1982) (district court has discretion to deny attorney's fees for time spent in establishing right to fees in underlying action).

Nikish has not satisfactorily supported its claims of attorneys' time related to defending the copyright infringement counterclaim, and its submission was not reasonable, carefully calculated, or conscientiously measured.

Any award under 17 U.S.C. § 505 in this case is limited to work related to Manatron's copyright infringement claim. But Nikish submitted time entries that do not clearly show how much time was devoted to this work. In evaluating work related to intentionally false testimony

by the witness, Dr. Joseph Bourland, the Court in *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 2002 WL 1801647 (S.D.Ind. July 5, 2002) stated:

> The court's fee award is limited, at least at this point, to work on the Bourland issues. Where lawyers' time records clearly show how much time was devoted to those issues, of course, there is no serious problem. But such a level of issue-by-issue detail in billing records is unusual, at least in this court's experience. Where St. Jude's lawyers combined work on the Bourland issues with work on other aspects of the case in the same time entry for a day, the problem is to allocate fairly the time spent on the compensable issues. See generally *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); Merriweather v. Family Dollar Stores of Indiana, Inc., 103 F.3d 576, 583-84 (7th Cir.1996) (affirming allocation of fees where party prevailed on one claim but not another).

After reducing the work on other claims, the work not performed in connection with the successful defense of the copyright claim, and the entries that were too heavily redacted to provide adequate information, the Court in *Randolph* reduced the lodestar 85%, and the defendants were awarded only $3,816.73 of their request for $35,276.43. *Randolph*, 634 F.Supp.2d at 799-801. If this Court does not outright deny Nikish's request for failure to calculate carefully or measure conscientiously its request, then Manatron is at least entitled to significant reductions for excessive, redundant, unnecessary, and undocumented entries.

**1. Nikish improperly provided block-billed entries that make it impossible to determine how much time was actually spent for tasks.**

Nikish submits numerous block-billed entries that make it impossible to determine whether the amount of time actually spent for each described task was reasonable. The block-billed entries total $116, 061.25 (see Category No. 20).[5] If an entry includes a task that Manatron believes should be denied, Manatron included the entire time entry for each specific objection because it could not otherwise determine the amount with any specificity.

Nikish also includes $5,363.57 for "expenses billed to Nikish by Bodman" but does not provide any detail for the nature of these expenses. *Declaration of Susan M. Kornfield*, p. 3. These expenses should be denied because there is no explanation for these expenses, let alone an explanation of how they relate to defending Manatron's copyright infringement counterclaim.

**2. Nikish is not entitled to attorneys' fees and expenses related to its Complaint or incurred before Manatron's Counterclaim was even filed.**

Manatron's Counterclaim for Injunctive Relief and Damages was filed on November 3, 2008. But Nikish claims fees and expenses as early as December 12, 2006, which is almost two years before Manatron's Counterclaim was even filed. Any fee or expense incurred before November 3, 2008 should be denied in its entirety. The entries before November 3, 2008 total $26,702.50 (see Category No. 1).

Nikish's Complaint is still pending so Nikish has not yet prevailed on any count in its Complaint and did not even reference a statutory or contractual basis for recovering fees and expenses on its Complaint. In *Tabcor Sales Clearing, Inc. v. United States*, 723 F.2d 26, 29

[5] Nikish attached a scanned spreadsheet of time entries to its Request for Attorneys' Fees and Expenses (Docket Nos. 142-1 and 142-2). Manatron twice requested this spreadsheet in native format so it could quickly and accurately copy each entry under Manatron's corresponding objection and present information to the Court in a concise manner. Nikish failed to show the common courtesy of even responding to those requests. As a result, Manatron has numbered each entry in the left hand margin and then used this entry number to identify entries under each category of objection. Because multiple objections apply to many entries, the objection categories are then listed in the right hand margin. See attached Exhibit D. A list of the objection categories is attached as Exhibit E. Manatron has also listed the time entries for each specific objection. See attached Exhibits 1 through 20.

(7th Cir 1983), the Court held that the district court did not abuse its discretion when limiting the fee award to work expended in defending the counterclaim and stated: "If there had been no counterclaim, Tabcor would be entitled to no remuneration at all." But in its request for fees and expenses, Nikish improperly includes tasks related to its Complaint and fails to discount those tasks related both to its Complaint and Manatron's copyright infringement counterclaim. For example, status and settlement conferences, case management plans, and discovery would have been necessary regardless of whether Manatron filed its compulsory copyright infringement counterclaim. Nikish is not entitled to an interim award of fees for tasks related to its Complaint that cannot otherwise be recoverable. The fee entries specifically related to its Complaint total $855.00 (see Category No. 6), and the fee entries related to the lawsuit in general total $85,441.25 (see Category No. 7).

The following expenses are related to court conferences:

| | |
|---|---|
| $167.80 | Kishin plane ticket to IND |
| $311.80 | Chris Bernard plane ticket to IND |
| $439.92 | Kishin/CBernard hotel stay in IND |
| $132.03 | Kishin/CBernard rental car IND |
| $2,000.00 | Estimated minimum expense for Kishin travel to IND from 2008-2010 |

*Declaration of Susan M. Kornfield*, pp. 3-4. The last entry is not substantiated as either to date or purpose so should be denied outright. Attendance at court conferences would have occurred as a result of Nikish's Complaint so is not related to Nikish prevailing on Manatron's copyright infringement counterclaim. While Nikish may argue that Manatron's copyright infringement counterclaim required the hiring of Bodman LLP and attendance at hearings, the time entries began long before Manatron's counterclaim, which suggest that Nikish's use of Bodman LLP

was not as a result of the copyright infringement counterclaim. And Nikish failed to set forth why such attendance was related to the copyright infringement counterclaim and not duplicative of its Indiana counsel. Because Nikish neither carefully calculated nor conscientiously measured the fees and expenses related to the copyright infringement counterclaim, it is not entitled to a recovery.

**3. Nikish is not entitled to expenses for Mr. Bharwani attending oral argument on Nikish's Motion for Summary Judgment.**

Upon Nikish's request, this Court set a hearing for argument on its Motion for Summary Judgment but did not require the attendance of client representatives (Docket No. 137). Ms. Kornfield argued for Nikish, and Mr. Bharwani attended but did not provide any testimony. Manatron should not be charged his attendance that was not required. The following expenses related to his attendance:

| | |
|---|---|
| $106.47 | Kishin/Susan hotel stay |
| $225.80 | Kishin plane ticket |
| $274.03 | Hertz Car Rental |

*Declaration of Susan M. Kornfield*, p. 4. This is a specific example of how Nikish's request includes excessive and unnecessary fees and expenses.

**4. Nikish is not entitled to attorneys' fees and expenses for obtaining summary judgment on counterclaims distinct from the copyright infringement counterclaim.**

This Court granted summary judgment on Manatron's Counterclaims for Breach of Fiduciary Duty (Count V), Breach of Contract (Count II), and Breach of Duty of Good Faith & Fair Dealing (Count VI) on grounds separate from the copyright infringement claim. Nikish is not entitled to fees and expenses related to these three counterclaims. Because Nikish did not delineate any entries to these specific counterclaims, Manatron cannot calculate the amount of

these fees so any award to Nikish should be discounted for its failure to account accordingly. The time entries related to Nikish's Motion for Summary Judgment total $22,777.50 (see Category No. 12).

In addition to the $22,777.50, Nikish requests $23,401.25 in fees for research, which has not been limited to Manatron's copyright infringement counterclaim (see Category No. 19). Nikish's request related to its Motion for Summary Judgment and research totals $46,178.75, even though the Motion for Summary Judgment was based only upon Dr. Austin's report of no similarities between the parties' source code. Because these entries include research apart from the copyright infringement counterclaim and are unreasonable, Manatron is entitled to a deduction but is unable to calculate an exact, reasonable amount because of the block-billed entries. Again, Nikish cannot obtain an award when it failed to calculate carefully and to measure conscientiously the fees and expenses related only to the copyright infringement counterclaim.

**5. Nikish is not entitled to attorneys' fees and expenses related to the Michigan lawsuit, the Clinton County lawsuit, or any depositions in separate lawsuits.**

The inclusion of fees for other lawsuits is another specific example of how Nikish's request is excessive. Nikish includes entries related to the Michigan lawsuit involving Manatron and the Clinton County lawsuit, of which Manatron is not a party. Nikish made no showing of how either of these lawsuits relate to copyright infringement claims so there is no basis for reimbursing these fees and expenses under 17 U.S.C. § 505. All such reimbursements should be denied. The fee entries related to the Michigan lawsuit total $9,108.75 (see Category No. 2). The fee entries related to the Clinton County Lawsuit total $460.00 (see Category No. 3).

Although there have not yet been any depositions of parties in this lawsuit, Nikish somehow includes fees and expenses for the depositions of Manatron and Mr. Bharwani. The

fee entries for his deposition total $5,711.25 (see Category No. 15), and the fee entries for the deposition of Manatron employees total $506.25 (see Category No. 16). All of these entries should also be denied.

Nikish includes two invoices from court reporter Stewart Richardson in June 2010, one for $710.85 and a second for $664.16. *Declaration of Susan M. Kornfield*, p. 4. The first deposition in this lawsuit was Mr. Wimpelberg in September 2010 so these expenses cannot be related to Manatron's copyright infringement counterclaims. These two expenses should be denied. Again, these specific examples illustrate how Nikish's request includes excessive, redundant, and unnecessary fees and expenses. Nikish failed to calculate carefully and to measure conscientiously its fees and expenses.

**6. Nikish is not entitled to attorneys' fees and expenses related to Warrick County or an Iorizzo matter.**

In its request, Nikish also includes entries related to Warrick County and a matter identified only as "Iorizzo". Warrick County does not involve copyright infringement claims. While Nikish submits a letter supporting inclusion of fees related to Warrick County, the letter starts, "Warrick County has asked Nikish Software Corporation to provide a response to a concern expressed by the County, namely, in light of the current litigation between Manatron, Inc. and Nikish, how can the County have confidence that its use of Nikish tax software will not be interrupted by the legal proceedings?" (Docket No. 142-2). Again, Manatron did not initiate any copyright infringement lawsuit with Nikish. As it notes in the letter, Nikish filed the complaint in this matter. Nikish's correspondence with Warrick County had no bearing on defending the copyright infringement counterclaim or prevailing on summary judgment. If Nikish's letter was relevant to its defense, then it would have been submitted with its Motion for Summary Judgment. These fees were not necessary in obtaining summary judgment on the

copyright infringement counterclaim, and Nikish was neither careful nor conscientious when including these fees in its request.

The Iorizzo matter is not explained and is unfamiliar to Manatron so its relevance to the copyright infringement counterclaim is unknown. There is no basis for reimbursing these fees and expenses under 17 U.S.C. § 505; all such reimbursements should be denied. The amounts related to Warrick County total $8,945.00 (see Category No. 4). The amounts related to the Iorizzo matter total $85.00 (see Category No. 5).

**7. Manatron has neither undertaken extensive discovery nor multiplied proceedings, and its unfair competition counterclaim survived summary judgment.**

Manatron has acted in good faith while seeking its day in court on its copyright infringement counterclaim. Manatron agreed to suspend this lawsuit pending Dr. Austin's analysis of the parties' source code. It avoided contentious motions to compel discovery and collaborated on a protocol to allow the review of the source code. Since filing its Complaint, Nikish has filed multiple pleadings:

- An Objection to Manatron's Motion to Amend Pleadings (Docket No. 44);
- A Motion for Judgment on the Pleadings (Docket No. 73);
- A Motion to Amend Reply to Counterclaims (Docket No. 83);
- A Motion for Summary Judgment (Docket No. 116); and,
- An Objection to Manatron's Rule 56(f) Motion (Docket No. 125).

This Court granted Manatron's Motion to Amend Pleadings and denied Nikish's Motion for Judgment on the Pleadings (Docket Nos. 50 and 99). Any fees or expenses related to these pleadings should be denied because Nikish did not prevail. The entries related to Nikish's

Motion to Amend Pleadings total $22,047.50 (see Category No. 9). The entries related to Nikish's Motion for Judgment on the Pleadings total $14,437.50 (see Category No. 11).

In comparison, Manatron has filed just two minor, substantive motions: a Motion for Leave to Assert Counterclaim for Injunctive Relief and Damages (Docket No. 40), and a Motion to Strike Portions of Nikish's Reply Brief in Support of Motion for Partial Judgment on the Pleadings or, in the Alternative, Motion for Leave to File Surreply (Docket No. 85). The Court granted the former and denied the latter as moot (Docket Nos. 98 and 99). Neither Manatron nor its counsel has multiplied the proceedings in this lawsuit so there is no basis for Nikish to cite such conduct in support of the fee request. *Declaration of Susan M. Kornfield*, p. 6. There is no evidence that Manatron has acted in bad faith.

After Nikish has filed its Motion for Summary Judgment, Daniel Wimpelberg initiated contact with Manatron. Mr. Wimpelberg, a former Nikish employee, initially agreed to provide an affidavit but ultimately required his deposition be taken in New York to obtain his testimony. Manatron attempted to avoid (and certainly did not cause) the need to depose him in New York so should not be faulted for Mr. Wimpelberg's reluctance to sign an affidavit. The fees entries related to Mr. Wimpelberg's deposition total $9,226.25 (see Category No. 13). The expenses include Chris Bernard's plane ticket to NY for $514.90. *Declaration of Susan M. Kornfield*, p. 3.

In order to take the depositions of Mr. Wimpelberg, Mr. Norris, and Mrs. Norris, Manatron filed a Rule 56(f) Motion for Extension (Docket No. 121). This Court granted Manatron's Motion over Nikish's objection and before Manatron filed a Reply in Support of its Motion. Because Nikish did not prevail on its objection and because the Norris depositions relate to the surviving unfair competition counterclaim, Nikish is not entitled to any related fees. These total $3,773.75 (see Category No. 10) and should be denied.

The portions of fees and expenses attributable to Manatron's unfair competition counterclaim should be denied because Nikish did not obtain summary judgment. If Manatron ultimately prevails on its unfair competition counterclaim related to Nikish's use of Manatron's product and projects, such a result is an additional ground for denying Nikish's request for fees and expenses. In *Berkla*, the district court's denial of attorney's fees on the copyright claim was not an abuse of discretion, and the Court stated:

> We find [Corel's] argument unpersuasive and agree with the district court that Corel's behavior in this case did not advance the purposes of the Copyright Act. In denying fees, the district court found that Corel's use of Berkla's nozzles to model its own Photo Paint images, while not technically violating the virtual identity standard of copyright infringement, nevertheless constituted a highly questionable business practice. The district court emphasized:
>
>> Most important ... is the fact that the jury found Corel had acted improperly in utilizing Berkla's databases for modeling of its own. While the jury's finding of maliciousness or oppressiveness or fraud on the part of Corel in breaching Berkla's confidence could be questioned, Corel has chosen not to contest these findings in post-trial motions. The jury's unaltered liability verdict speaks loudly in proclaiming that Corel should not be rewarded for prevailing on a finding regarding copyright standard of proof in light of the found misdeeds on related issues.
>
> It would be inconsistent with the Copyright Act's purposes to endorse Corel's improper appropriation of Berkla's product by awarding fees.

*Berkla*, 302 F.3d at 923. A finding that Nikish unfairly competed when marketing its product to potential customers would bar Nikish's claims for its fees and expenses.

The depositions of Vicky and Will Norris relate to Manatron's unfair competition claim because they attended Nikish's demonstrations in 2006. As a result, the fees and expenses related to the Norris depositions should be denied. Nikish apparently combined the court

reporter expenses of the Wimpelberg and Norris depositions, which total $971.12. *Declaration of Susan M. Kornfield*, p. 4. The entries related to the depositions of Will and Vicki Norris total $8,368.75 (see Category No. 14). Again, Nikish failed to calculate carefully and to measure conscientiously its fees and expenses so is not entitled to any award.

**8. Nikish is not entitled to attorneys' fees and expenses for internal communications and discussions with Indiana counsel.**

In its request, Nikish includes numerous entries related to internal conferences, correspondence, and discussions, as well as discussions with its Indiana attorneys. Nikish retained McNeely Stephenson Thopy & Harrold to prosecute its Complaint against Manatron. And Bodman LLP only entered appearances after Manatron moved for leave to file its counterclaims against Nikish. (Docket No. 45). While Nikish has properly only submitted fees and expenses from Bodman LLP; it requests $24,276.25 in fees from Bodman LLP for conferences, correspondence, and discussions with McNeely Stephenson Thopy & Harrold (see Category No. 18). This amount is in addition to $60,616.25 for office conferences, correspondence, and discussions (see Category No. 17). These attorney communications total $84,892.50, which is even after the effective hourly rate was reduced approximately 15% but which is still over half of the total fees billed by Bodman LLP to Nikish ($144,523.75). *Declaration of Susan M. Kornfield*, pp. 3, 5.

This amount is excessive and astonishing, and Nikish does not explain why Bodman LLP needed any input, let alone such an extensive amount, from McNeely Stephenson Thopy & Harrold on defending the copyright infringement counterclaim. This appears to be another attempt to recover fees and expenses prosecuting Nikish's Complaint rather than defending Manatron's copyright infringement counterclaim. These entries are unreasonable and not justified 17 U.S.C. § 505 so should be denied.

**9. While Manatron does not dispute that Nikish is entitled to recover its payment of Dr. Austin's fees once final judgment is entered in this lawsuit, Nikish's fee request related to Dr. Austin's analysis is unreasonable.**

Per the Joint Discovery Plan for Production of Source Code (Docket No. 79), the parties stipulated that the prevailing Party shall be entitled to recover its payment of Dr. Austin's fees and expenses. Though this Court has entered summary judgment on Manatron's copyright and trade secret infringement counterclaims, this judgment is not yet final. The earliest Nikish may be entitled to recover his two payments totaling $13,440.62 to Dr. Austin is when final judgment is entered in this lawsuit. *Declaration of Susan M. Kornfield*, p. 3.

Nikish's request for fees related to Dr. Austin totals $35,041.25 (see Category No. 8), which is almost three times Nikish's share for Dr. Austin's work ($13,440.62). The only explanation for these expenditures is a parenthetical: "Nikish paid half of Dr. Austin's expert fee (and its attorneys' fees associated with selecting the expert, negotiating with Manatron and working with the magistrate judge to formulate a source code review plan, and implementing the plan)." *Nikish's Brief in Support of Motion for Attorneys' Fees and Expenses*, p. 10. There is no explanation why counsel charged more time than what Dr. Austin actually charged reviewing the parties' source code, especially when Dr. Austin needed additional time than initially estimated to complete his analysis. (Docket Nos. 108 and 110). Nikish's request for these fees is excessive and redundant.

**10. Nikish is not entitled to attorneys' fees and expenses omitted from its request.**

Nikish requests $8,485.00 for fees not yet billed and not included in its spreadsheet of time entries, which apparently mostly relate to the fee petition filed on December 22, 2010. *Declaration of Susan M. Kornfield*, pp. 2-3. If so, then they should be denied because Manatron has not had the opportunity to review for objections and because this amount for preparing a fee petition is unreasonable, particularly when it is apparent that Nikish failed to exclude entries and

expenses obviously unrelated to Manatron's copyright infringement counterclaim and not recoverable under 17 U.S.C. § 505. And, simply ignoring Manatron's requests for Nikish's spreadsheet of entries caused Manatron to incur unnecessary time and expense to prepare its objections to the time entries.

### D. Nikish's Request is premature because final judgment has not been entered, and Manatron is entitled to a set off should it prevail on its counterclaim or Nikish's Complaint.

Nikish's Motion for Summary Judgment did not dispose of Manatron's unfair competition counterclaim or address any of Nikish's claims against Manatron. And the judgment on Manatron's copyright infringement counterclaim is not final. If Manatron prevails on Nikish's defamation claims, then Manatron would be entitled to recover reasonable attorney's fees and costs under Indiana's Anti-SLAPP statute. Ind. Code § 34-7-7-7. If Manatron prevails on its unfair competition counterclaim, then judgment would be entered in its favor and would potentially set off any award under 17 U.S.C. § 505. Nikish's request for interim fees and expenses is premature and should be deferred until all claims and counterclaims have been disposed.

While no case law or statute prevents Nikish from petitioning for fees under 17 U.S.C. § 505 at this time, district courts have expressly declined to issue an order for the payment of fees and costs until a final ruling on the merits and as to the entire action has been made. In *Knowledgeaz, Inc. v. Jim Walters Resources, Inc.*, 2009 WL 425961, at *3 (S.D.Ind. Feb. 19, 2009), the district court (Judge Richard Young) granted summary judgment to various defendants on "a number of plaintiff's claims" and dismissed all claims as to only one of the defendants. As part of that ruling, the district court also granted summary judgment in favor of two other defendants (Seipel and Action Authority) on plaintiff's copyright infringement and inducement to infringe claims. Seipel and Action Authority then filed a motion seeking

attorneys fees under 17 U.S.C. § 505. The district court concluded that the motion for fees was premature. *Id.* at *5. The district court stated: "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)." 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2667, p. 204 (3d ed.2008). The district court further explained:

> While neither Fed.R.Civ.P. 54 nor Local Rule 54.1 specifically state that a final judgment must be entered before a prevailing party may seek costs or attorney fees, the same seems to be a legitimate inference. While it may be true that a party can prevail on various issues before it receives a judgment, it is the final judgment which solidifies that status, at least prior to any appeal. Further, as a practical matter, it is not the practice of this court for the Clerk to tax costs or the court to rule on any objection until after a final judgment has been entered and, even then, sometimes costs are not taxed until after an appeal, to assure that no party has to seek reimbursement from another following a successful appeal. The awarding of attorney fees is, generally, an action taken by the court contemporaneous to the entry of a judgment, or done subsequently upon the petition of a party.

*Id.* The district court then emphasized it had yet to enter a final judgment. *Id.* The district court further pointed out that it had not certified any of its order as final under Fed.R.Civ.P. 54(b). The court noted:

> This has been intentional on the part of the court, as the litigants have shown every sign of pursuing their respective positions through any and all levels of appeal possible. If this case does make its way to the Seventh Circuit, it would only be appropriate to offer that Court the opportunity to address all appealable issues in a singular effort. Accordingly, while the Bill of Costs and Motion for Attorney Fees filed by Defendants Seipel and Action Authority appear to be well taken, the court does not intend to act on these requests prematurely. When all the claims in this lawsuit have been resolved, the court will take appropriate action with regard to any and all requests for costs and fees.

*Id.* at *5. Consequently, the district court merely took the motion for fees and costs under advisement. *Id.* at *6.

Similarly, in *Columbia Pictures Industries, Inc. v. Zakarian,* 1991 WL 93889, at *6 (N.D.Ill. May 28, 1991), the district court granted partial summary judgment only. It granted a summary judgment to plaintiffs on the issue of copyright infringement but denied summary judgment on the issue of statutory damages because issues of material fact existed regarding the willfulness of that infringement. Following the ruling, Plaintiffs filed a request for an award of fees and costs under 17 U.S.C. § 505. The district court determined that plaintiffs prevailed on their claim for copyright infringement and further noted that a finding of willfulness is not necessarily a prerequisite to an award of fees and costs under § 505. *Id.* Nonetheless, the district court declined to rule on the motion for fees and costs prior to a ruling on the merits of the underlying litigation and stated that "because the Court has not yet made an award of statutory damages, it will enter and continue plaintiffs' motion for attorneys' fees and costs until such time as it determines the appropriate statutory damages award." *Id. Accord Rano v. Sipa Press, Inc.*, 987 F.2d 580, 589 (9th Cir. 1993) (in affirming the district court's grant of summary judgment in favor of defendant on the issue of copyright infringement as to plaintiff's claims for material breach and reversing the grant of summary judgment in favor of defendant on plaintiff's claim for improper copyright notice (and remanding for further proceedings), the 9th Circuit found that plaintiff's request for attorney's fees under 17 U.S.C. § 505 was premature). Now is not the time to address an award of fees and expenses.

**E. If this Court finds that Nikish is entitled to fees and expenses under 17 U.S.C. § 505, then such award should be limited to an reasonable amount for researching, drafting, and arguing its Motion for Summary Judgment, along with establishing the protocol for Dr. Austin's review of the parties' source code.**

While Manatron does not believe that Nikish has either met the burden of recovering under 17 U.S.C. § 505 or established actual and reasonable fees related only to the copyright infringement counterclaim, any such award should be limited to researching, drafting, and

arguing its Motion for Summary Judgment. And, because Nikish only relied upon Dr. Austin's report when it filed its Motion for Summary Judgment, any award may also include reasonable fees establishing his protocol. As discussed above, Nikish's requests $46,178.75 in fees related to its Motion for Summary Judgment and research (Categories 12 and 19) and $35,041.25 in fees related to Dr. Austin (Category 8). The Southern District of Indiana faced the issue of quantifying time in the patent case *Eli Lilly and Company v. Zenith Goldline Pharmaceuticals, Inc.*, 264 F.Supp.2d 753, 774-775 (S.D.Ind. 2003), and stated:

> Nevertheless, as compared to most of the specific challenges discussed above, it is difficult to quantify the excess amounts in these categories of time, just as it is difficult to quantify "waste" in a government agency's budget. (Few budgets include "waste" as a line item.) In such circumstances, especially with such a large fee request, and with many specific demonstrations of unreasonable and excessive portions of the fee request, the court can apply a rough estimate to the remaining hours in question and can make a reasonable deduction on a percentage basis.

While the use of block-billed entries prevents Manatron from identifying specific reasonable and relevant entries, Manatron submits that $18,000.00 is a reasonable amount for Nikish obtaining summary judgment on Manatron's copyright infringement counterclaim, while $2,899.98 is a reasonable amount for establishing Dr. Austin's protocols. The relevant expenses would be Nikish's two payments totaling $13,440.62 to Dr. Austin and Ms. Kornfield's $659.40 plane ticket to Indianapolis to argue the Motion for Summary Judgment. Anything more than $35,000.00 in fees and expenses would be excessive, redundant, and unreasonable.

**F. Conclusion**

While Nikish prevailed on Manatron's copyright infringement counterclaim, this judgment is not yet final. Nikish boldly argues that it is entitled to an interim award of fees and expenses despite an opinion from the Southern District of Indiana stating, "The court does not take *Assessment Technologies* to require in every case a sanction on a losing plaintiff who in good faith sought its day in court."

The Seventh Circuit in *Vocca* said that denying an award of fees "is an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees." Nikish overreaches by including fees and expenses that are obviously unrelated and unnecessary to defending Manatron's copyright infringement counterclaim. Such unnecessary and excessive entries are not recoverable under 17 U.S.C. § 505. The best examples are the request for fees incurred in the two years before Manatron actually filed its counterclaims and incurred in other lawsuits not involving copyright infringement claims.

Manatron honestly and reasonably believed that there was copyright infringement in this case and prosecuted its counterclaim in good faith. Nikish failed to enlarge the public domain by winning summary judgment. Because Nikish's request for interim fees and expenses is not warranted, premature, excessive, redundant, and unreasonable, it should be denied.

FROST BROWN TODD LLC

By: /s/ Joel E. Tragesser
James Dimos, #11178-49
Joel E. Tragesser, #21414-29
Richelle M. Harris, #26401-49
Attorneys for Defendant/Counter-Plaintiff
Manatron, Incorporated

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**J. Lee McNeely**
**Brady J. Rife**
MCNEELY STEPHENSON THOPY & HARROLD
jlmcneely@msth.com
bjrife@msth.com

**G. Christopher Bernard**
**Susan M. Kornfield**
BODMAN LLP
cbernard@bodmanllp.com
skornfield@bodmanllp.com

/s/ Joel E. Tragesser

FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
P.O. Box 44961
Indianapolis, IN 46244-0961
Phone: 317-237-3800
Fax: 317-237-3900
jdimos@fbtlaw.com
jtragesser@fbtlaw.com
rharris@fbtlaw.com

**INDEX OF EXHIBITS**

| **Exhibit** | **Description** |
|---|---|
| A | Nikish's Vendor History |
| B | Nikish's Response to Tippecanoe County's RFP |
| C | Nikish's Response to Vigo County's RFP |
| D | Nikish's spreadsheet of time entries with Manatron's notations |
| E | List of Categories of Objections to Time Entries |
| 1 | Category No. 1 - Pre-November 3, 2008 |
| 2 | Category No. 2 - Michigan Lawsuit Between Manatron and Nikish |
| 3 | Category No. 3 - Indiana Lawsuit Between Clinton County and Nikish |
| 4 | Category No. 4 - Warrick County Matter |
| 5 | Category No. 5 - Iorizzo Matter |
| 6 | Category No. 6 - Nikish's Complaint for Tortious Interference with Contract and Business Relations, Defamation, and Breach of Contract |
| 7 | Category No. 7 - Lawsuit Generally |
| 8 | Category No. 8 - Source Code Review by Computer Expert Professor Todd Austin |
| 9 | Category No. 9 - Manatron's Motion to Amend Pleadings (Counterclaim) |
| 10 | Category No. 10 - Manatron's Rule 56(f) Motion |
| 11 | Category No. 11 - Nikish's Motion for Judgment on the Pleadings |
| 12 | Category No. 12 - Nikish's Motion for Summary Judgment on Manatron's Counterclaims |
| 13 | Category No. 13 - Deposition of Daniel Wimpelberg |

| **Exhibit** | **Description** |
|---|---|
| 14 | Category No. 14 - Depositions of Will and Vicki Norris |
| 15 | Category No. 15 - Deposition of Kishin Bharwani |
| 16 | Category No. 16 - Manatron Depositions |
| 17 | Category No. 17 - Attorney Office Conferences, Correspondence, and Discussions |
| 18 | Category No. 18 - Conferences, Correspondence, and Discussions with Indiana Counsel |
| 19 | Category No. 19 - Research |
| 20 | Category No. 20 - Block Time Entries |

INDLibrary2 LR13380.0991885 1006927v2