**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

NIKISH SOFTWARE CORPORATION AND KISHIN BHARWANI,

Plaintiffs,

v.

MANATRON, INC.

Defendants.

---

MANATRON, INC.

Counterclaimant,

v.

NIKISH SOFTWARE CORPORATION AND KISHIN BHARWANI,

Counterdefendants.

---

CASE NO. 1:07-cv-00358-TWP-DML

Hon. Tanya Walton Pratt

Magistrate Judge Mark J. Dinsmore

**PLAINTIFFS-COUNTERDEFENDANTS' REPLY TO MANATRON'S RESPONSE TO ITS MOTION FOR ATTORNEYS FEES AND EXPENSES**

The entirety of Manatron's response to Nikish's claim for attorneys' fees and costs can be summarized as "Because we say so. Trust us." U.S. copyright law, however, has a different standard: "Defendants who defeat a copyright infringement action are entitled to a strong presumption in favor of a grant of fees." *HyperQuest, Inc. v. N'Site Solutions, Inc.*, -- F.3d --, 2011 WL 148803, *9 (7th Cir. January 19, 2011). This standard does not require that we believe

or trust Manatron. Manatron's own conduct, and statements to this Court, are the best source of the evidence establishing that the Court should grant Nikish's motion for attorneys' fees.

At bottom, the Court can dispense with the contentions of Nikish as follows: (1) even if the Court believed Manatron's heart was pure and it acted in good faith, that would not change the standards under the U.S. Copyright Act and Seventh Circuit case law for awarding attorneys' fees; (2) Manatron pleaded copyright infringement as part of every single count in its counterclaim, and thus the fees incurred by Nikish in responding to every single count is properly considered in the petition for attorneys' fees; (3) Manatron alleged copyright infringement in 2006 and Nikish began incurring fees in 2006 in response to such accusation; (4) Manatron, at the time it alleged copyright infringement, was a part of a multibillion dollar enterprise (and even today has hundreds and hundreds of employees) and has been in the field of tax software for decades. Nikish has less than 10 employees and has been in the field of tax software for a few years (even though advances in technology has enabled it to create a superior Web-based software product). Manatron's suggestion that this is not a "David and Goliath" situation reflects merely Manatron's failure to read the Bible.

## ARGUMENT

### A. The Standard: A Strong Presumption that Fees Should Be Awarded.

Manatron asks the Court to believe that Manatron has acted in good faith, and then to conclude that such "good faith" overcomes the presumption of a fee award for three reasons. Manatron does not offer any evidence in support of this belief, and even if it did, the presumption of granting attorney fees under applicable law is very strong regardless of the claimed purity of heart. The cases on which Manatron relies do not support its propositions.

Further, as the Seventh Circuit held just a few days ago, the fact that a party alleging copyright infringement brought the claim in good faith is not a basis to overcome the presumption granting attorney fees:

> We accept, as the district court apparently did too, that HyperQuest's [copyright infringement] suit was filed in good faith and had some merit. But this does not distinguish it from a great many copyright infringement cases. *HyperQuest, Inc. v. N'Site Solutions, Inc.*, -- F.3d --, 2011 WL 148803, *9 (7th Cir. January 19, 2011).

As this Court noted in its Order, Manatron "fired the shot leading to the present dispute." See "Entry on Motion for Summary Judgment," Dkt. No.139 Filed 12/8/2010 ("Order") at 3. Manatron's lack of good faith is seen throughout the dispute:

(1) Manatron publicly proclaimed that Nikish stole Manatron's code even though Manatron had never even seen Nikish' code, had no witnesses who had seen the code, could not find any witnesses even four years later.

(2) Manatron used its claim of copyright ownership as a marketing tactic against *every single potential Nikish customer* in the entire State of Indiana.

(3) Manatron tried to have the best of both worlds – allege copyright infringement but not have to prove copyright infringement. It waited over a year and a half to assert a counterclaim of copyright infringement and never moved for a preliminary injunction. Meaning, it never acted the way that companies in good faith act when they think their copyrights have been infringed. Why answer to a federal court when it could scare off customers of Nikish by threatening to sue every one of them?

(4) Manatron pleaded a defunct "common law copyright" claim and refused to dismiss it even after being notified by attorneys for Nikish.

(5) Manatron pleaded copyright infringement allegations in every single count of its ten-count counterclaim, requiring counsel for Nikish to investigate the relevance of such allegations to each such legal theory.

(6) In response to Nikish's motion for judgment on the pleadings and arguing preemption Manatron fought back, vigorously asserting that the copying allegations for every single count were proper.

(7) Manatron vigorously fought against Nikish's motion for summary judgment, scouring the country for someone, anyone, who could testify on the issue of unlawful copying and help bail Manatron out of the position of having alleged copyright infringement at the top of its lungs only to find out it had no evidence, and had never had evidence

of copying. Manatron could only find people who would not know a code if it bit them. Order at 13-14.

(8) The expert witness agreed upon by the parties found no evidence at all of any copying of content owned by Manatron. Yet up to the week of oral argument in December 2010, *Manatron was still calling county prosecutors of Nikish clients to ask if they had any evidence of copying by Nikish of Manatron code*.

The Court does have to find that Manatron acted in bad faith, though the facts would certainly support that. The Court does not have to find that Manatron failed to act in good faith. As the Seventh Circuit has noted, the presumption for granting attorney fees under *Riviera Distributors, Inc. v. Jones, 517 F.3d 926, 928 (7th Cir. 2008)* is "very strong" in a case like this one. In response, Manatron attempts to mislead this Court through inappropriate case citations.

For example, Manatron cites *Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605 (7th Cir. 1982) for the proposition that "a district court, in the exercise of discretion, may properly deny attorney's fees entirely." Manatron's Response Brief at 12. However, *Vocca* does not involve an application for attorney fees under the Copyright Act – *Vocca* is an age discrimination case.

Similarly, Manatron cites *Assessment Technologies of Wisconsin, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004), contending that fees should not be awarded. But *Assessment Technologies*, in fact, holds that the presumption of attorney fees under the Copyright Act is "very strong" where the copyright claim lacked merit:

> When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong. For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights.

Here, Nikish successfully defeated nine out of ten of Manatron's counterclaims where each relied upon allegations of unlawful copying. The Court's Order held that Manatron's

claims have so little merit that they could not even survive a motion for summary disposition. Order at 13 ("Simply stated, the Court is not persuaded by Manatron's arguments"). Importantly, Nikish received *no damages* due to the Order. Thus, under *Assessment Technologies* plain language, Nikish's claim for an attorney fee award is compelling and the presumption of award of attorney fees is "very strong."

Further, the policy underlying *Assessment Technology* further supports this conclusion. The Seventh Circuit provides a clear rationale for its holding:

> The point is only that when a meritorious claim or defense is not lucrative, an award of attorneys' fees may be necessary to enable the party possessing the meritorious claim or defense to press it to a successful conclusion rather than surrender it because the cost of vindication exceeds the private benefit to the party. The best illustration is in fact a case like this, where the party awarded the fees, being the defendant, could not obtain an award of damages from which to pay his lawyer no matter how costly it was for him to defend against the suit. *Id.*

Here, in order to fully vindicate its rights and defeat Manatron's meritless claims, an award of attorney fees to Nikish is needed. Otherwise, as the Seventh Circuit pointed out, it is difficult for a small company such as Nikish to maintain its rights due solely to the cost of continuing the suit. Manatron's assertion that it was "compelled" to file the counterclaims is laughable, Response in Opposition at 2, and Manatron certainly cannot explain how it was forced to file ten claims, all of them mere recharacterizations of alleged unlawful copying.

Just as Manatron relied upon "common law copyright," a claim that has not existed since 1977, Manatron relies upon a standard for the award of attorneys' fees that has not existed since 1994. Manatron argues that a showing of good faith is sufficient to overcome the strong presumption of awarding attorney fees under 17 U.S.C. § 505. That argument was expressly rejected by the Supreme Court in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

In *Fogerty*, the Supreme Court described two potential standards for granting attorney fees under 17 U.S.C. § 505: (1) the "dual" standard, where "prevailing defendants must show that the original suit was frivolous or brought in bad faith," and (2) the "evenhanded" standard, where "no distinction is made between prevailing plaintiffs and prevailing defendants," and a showing of "bad faith" is not required. *Id.* at 520-521. The Supreme Court specifically rejected the "dual" standard and a required showing of bad faith: "[w]e thus reject each of respondent's three arguments in support of the dual standard." *Id.* at 533. The court went on to accept the "evenhanded" standard, which does not consider bad or good faith. *Id.* at 534.

The Seventh Circuit has adopted the *Fogerty* Court's rejection of the "dual" standard. *TE-TA-MA Truth Foundation-Family of URI, Inc. v. The World Church of the Creator*, 392 F.3d 248, 258-259 (2004). As such, Manatron's argument that its alleged good faith defeats the presumption is without merit.

Manatron finally offers up *Traicoff v. Digital Media, Inc.*, 2007 WL 2286133 (S.D. Ind. 2007) (unpublished) for the proposition that it should not have to reimburse Nikish for fees incurred in defending meritless allegations. The *Traicoff* court, in rejecting a motion for fees, was persuaded by the fact that the plaintiff came armed with a favorable case in the Ninth Circuit, no case law in the Seventh Circuit against him, no attempt to extort money out of the opposing party, and no conduct suggesting copyright misuse. In contrast to *Traicoff*, Manatron never had evidence supporting its claim. Indeed, this Court dismissed nine of out ten of its claims due to an utter lack of credible evidence. Also unlike *Traicoff*, dispositive case law in the Seventh Circuit went against Manatron's position. *See, e.g.*, *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.*, 805 F.2d 663 (7th Cir. Ill. 1986) (abolishing the "common law" copyright infringement theory as preempted by federal law). Manatron clearly attempted to use

its assertion of copyright infringement to destroy Nikish's business in Indiana, and indeed was trying to engage prosecutors to go after Nikish through the date of oral argument on the summary judgment motion. This Court has ruled that Manatron did not have a reasonable view of copyright infringement law. *Traicoff* does not support Manatron.

**B. David v. Goliath.**

Courts often rely on the concept of "David and Goliath" when considering the additional legal burden of litigation upon the small company. *See, for example*, the recent case of *Harkabi v. Sandisk Corp.*, 08 Civ. 8203 (WHP) (S.D.N.Y. Aug, 23, 2010), where a court, exercising its inherent power ordered monetary sanctions of $150,000 in a " 'David-and Goliath-like' struggle for electronic discovery." Considerations of the respective economic positions of the parties is equitable in nature, and reflect that, in the real world, meritless litigation by a large company against a small one can ruin the small company, even if it prevails. The attack upon Nikish by Manatron is just such a battle.

Manatron asserts that, because Nikish holds itself out to customers as sophisticated and competent, it is like a large company. Manatron never tells the Court that it has over 400 employees and Nikish has less than 10. Manatron asserts that Nikish has existed for over 20 years and is thus like a large company when it comes to tax software. Manatron never tells the Court that Nikish offered its first tax software product in 2006 – in beta form – and was certified by the Indiana Department of Local Government Finance in 2008. See Order at 2-3.

This case is the *definition* of "David v. Goliath."

It is true that Nikish has developed great experience and expertise in the realm of financial processes, software design, software development, software support, tax processes, customer relationships, project management, and the like, and that it could draw upon those

skills when entering a new market with a new product. It may also be true that Manatron, with its old technology and lists of unhappy customers, fears a sophisticated and technologically savvy "new player" in that market, but that does not change the economics of meritless litigation. Even if Manatron has not read the Bible, it should at least read Wikipedia.[1]

**C. Nikish's Fees are Reasonable.**

Manatron repeatedly states that Nikish's claim is not "carefully calculated or conscientiously measured." This statement, however, is unsupported and false. Courts uniformly hold that they may ignore bald, unsupported allegations. *See, e.g.*, Winterland *Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984); *see also U.S. v. Scott*, 2010 WL 5058544, *2 n. 2 (N.D.Ind. 2010) (unpublished).

The Court should reject Manatron's assertion that Nikish's attorney fee claim is excessive for several reasons: (1) Nikish substantially reduced fees for time actually spent directly on the issues raised in the nine counts of Manatron's counterclaims dismissed by this Court, (2) Nikish did not seek reimbursement for attorney time actually spent on Nikish matters that were at least tangentially related to the Manatron litigation, (3) Nikish did not seek reimbursement for time actually spent but unrelated to the Manatron litigation, and (4) Manatron's specific allegations of overreaching are not supportable in fact or law. *See, e.g.*, Supplemental Declaration of Susan M. Kornfield, attached as **Exhibit A**, noting that Bodman PLC ("Bodman") charged Nikish, but Nikish is not seeking reimbursement from Manatron for, over $37,000 in other fees and expenses related to the Manatron litigation, or for fees for other legal services provided to Nikish. Nikish is, however, seeking fees for its motion for attorneys' fees, which courts have permitted as

[1] http://en.wikipedia.org/wiki/Goliath.

legitimate expenses, and is seeking a total of $203,487.90. See Supplemental Declaration of Susan M. Kornfield, ¶ 7

**Second**, Bodman did not "block-bill" its time entries, and has provided the court with information as to each attorney, each day, and each time entry. This allows the Court to examine the time entries on an issue-by-issue basis. Bodman's time entries extend over 65 pages. It is not as if Bodman had time entries that said, "Six hours: Worked on Nikish matter." By contrast, as noted in Exhibit 1 to the Declaration of Susan M. Kornfield in Support of Nikish's Motion for Attorney's Fees, the time entry on August 4, 2009 states:

> Receipt and review by Mr. Bernard of Motion by Manatron to Strike Portions of Reply Brief re Partial Summary Judgment or in the Alternative, to File Sur Reply; receipt and review by Mr. Bernard of Response in Opposition to Motion to Amend Affirmative Defenses; initial drafting by Mr. Bernard of responses to same; further review by Mr. Bernard of qualifications of potential source code experts proposed by Manatron; drafting by Mr. Bernard of email to Mr. Dimos re same. Declaration of Susan M. Kornfield in Support of Motion of Plaintiffs-Counterdefendants' for Attorneys' Fees and Expenses dated December 22, 2010.

Another example of a detailed time entry, on October 1, 2009, is:

> Review by Mr. Bernard of source code discovery plan and telephone discussion between Messrs. Bernard and Dimos re execution of same; drafting by Mr. Bernard of email to Mr. Bharwani re source code discovery plan requirements; drafting by Mr. Bernard of email to Mr. Rife re intent to postpone further discovery pending source code discovery plan execution.

These examples are not "cherry picked" or unusually detailed entries. Rather, they are representative of an overwhelming majority of the time-entries, and clearly provide sufficient detail. As noted in *Cardiac Pacemakers v. St. Jude Medical, Inc.*, it is "unusual" for an attorney to detail their time issue-by-issue. 2002 WL 1801647 (S.D. Ind. 2002) (unpublished). Attorneys

typically record time by time entries reflecting the client-related services for that day, which is what Bodman did. Bodman's time entries are entirely sufficient to evaluate the merits of Nikish's claim for attorney fees.[2]

**Third**, Manatron asks the Court not to require it to pay the fees it required Nikish to incur before Manatron filed its "compulsory" counterclaim. Nothing in the U.S. Copyright Act supports this assertion, as the only statutory guidance is the court's "discretion," *see* 17 U.S.C. § 505, and Manatron cites no case in support of its novel assertion. Interestingly, because Manatron contends that its counterclaim was "compulsory," Manatron is conceding that the claims against Nikish arise out of the facts alleged in the complaint filed by Nikish (as, of course, they do). Accordingly, while Manatron may be free procedurally to delay filing its claims, it is not free to contend that Nikish did not have an absolute right to defend itself against the meritless allegations of copyright infringement.

We see a pattern here – Manatron refuses to accept the consequences of its own conduct. It is as if Manatron comes to this Court stating "please allow me to send out threatening letters to every auditor in the State of Indiana, charging a little competitor with intellectual property theft, and threatening those auditors with legal and operational gridlock if they license my competitor's software, and, if I send out that letter, please don't hold me responsible for the hundreds of thousands of dollars I cause this little competitor to incur responding to my false accusations."

If Manatron had not falsely alleged copyright infringement, Nikish would not have filed suit to stop it and Nikish would not have incurred *any* attorney fees. Manatron brought this suit – and these fees – upon itself.

---

[2] Nikish agrees that the single time entry related to Iorizzo should be eliminated and the request for fees reduced by $85 accordingly. While the amount actually sought from Manatron related to this matter has already been reduced, this entry was inadvertently overlooked.

**Fourth**, perhaps illustrative of just how desperate Manatron is to reduce the fees it might otherwise have to pay, it tells the Court not to award fees and expenses associated with Mr. Bharwani's attendance at a court hearing for which the Court had not ordered his attendance. This is simply an astonishing statement. Manatron sued Mr. Bharwani personally. Mr. Bharwani is a party, in addition to being the representative of the other party, his company. He is absolutely entitled to attend the judicial proceedings that affect him. Manatron has identified neither the legal basis nor the relevance of this argument.

**Fifth**, all the counts that were dismissed have, as their cornerstone, allegedly unlawful copying. Thus, the Court should disregard the suggestion from Manatron that the fees incurred relating to any count not labeled "copyright infringement" should be excluded. Manatron's Response at 17. As the Court noted, it dismissed five[3] of the ten counterclaims because they were simply the copyright infringement claim "recast under a different banner." Order at 18. As other courts have noted, a "party that prevails on a claim under the Copyright Act may recover attorney's fees for the copyright claims and *any other related claims*." *The Traditional Cat Ass'n, Inc. v. Gilbreath,* 340 F.3d 829, 833 (9th Cir.2003) (emphasis in original). The Ninth Circuit has stated that claims are related when they "arise from the same course and conduct." *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1230 (9th Cir. 1997). Claims are unrelated when they allege "distinctly different claims for relief that are based on different facts and legal theories' from the other causes of action in the overall litigation." *Id.*

Here, Manatron based all three[4] of the other dismissed counts on the same nucleus of operative facts as the copyright infringement claim – *i.e.*, that Nikish allegedly took advantage of

---

[3] Misappropriation of Trade Secrets, Tortious Interference, Unjust Enrichment, Deception, and Conversion.

[4] Breach of Fiduciary Duty, Breach of Contract, and Breach of Duty of Good Faith & Fair Dealing.

a business relationship by copying Manatron's source code. In its Breach of Contract count, Manatron repeats and realleges the copying allegations and states "[t]his Agreement obligated and continues to obligate Nikish and Bharwani to hold Manatron's confidential and proprietary information in trust and not to disclose this information or use this information to develop software programs to compete with Manatron." Counterclaim at ¶ 54.

In its count for Breach of Fiduciary Duty/Confidentiality, Manatron repeats and realleges the copying allegations and states:

> By virtue of its business/contractual relationship of confidentiality with Manatron, Nikish stood in a fiduciary relationship with Manatron, Nikish was entrusted with Manatron's MVP application source code and was compensated by Manatron to work on behalf of Manatron's best interest. Counterclaim at ¶ 73.

In its count for Breach of Duty of Good Faith and Fair Dealing, Manatron repeats and realleges the copying allegations and states:

> Pursuant to that Agreement, Nikish and Bharwani agreed to "use commercially reasonable efforts" to develop the software program, maintain confidentiality of Manatron's confidential and proprietary information, to return confidential information upon termination of the Agreement, and not to use the confidential information to develop software programs that would directly compete with Manatron. Counterclaim at ¶ 80.

These allegations all clearly relate to the facts providing the foundation for the copyright infringement claim. Manatron cannot now reasonably argue that Nikish is entitled to fees only for the single count of copyright infringement because all of the nine dismissed counterclaims center on the same set of factual allegations.

**Sixth,** Nikish is entitled to its fees and costs related to the Michigan and Clinton County disputes (and their associated depositions) even though it is not, in fact, requesting fees for the Michigan litigation (other than the small amount attributable to Nikish's ownership of

intellectual property rights in Tax Claim). See Supplemental Declaration of Susan M. Kornfield, ¶ 3. Manatron can hardly claim that the Clinton County lawsuit is not related to its copyright infringement claim when, during the oral argument for Nikish's Motion for Summary Judgment, it *projected onto the overhead* a quote from a deposition from the Clinton County lawsuit. Clearly, Manatron's counsel at that time thought that the Clinton County dispute was relevant. Now, in the face of a motion for fees and costs, Manatron has done an about-face without any substantive explanation. Further, Nikish is seeking almost no reimbursement for the Clinton County matter. There are just seven time entries, totaling $1,404. See Supplemental Declaration of Susan M. Kornfield, ¶ 4.

In any event, of the $203,487.90 sought in reimbursement, only $1,404.00 relates to Clinton County, and all of that relates to the impact on the Manatron litigation. Likewise, as a result of the Michigan lawsuit, Manatron agreed that Nikish co-owned the intellectual property rights in Tax Claim, and as such, Nikish could not infringe Manatron's copyrights by virtue of using anything in Tax Claim software. This point was so fundamental and highly relevant to a claim for copyright infringement that it was included in the instructions provided to the source code expert. *See* Expert Report of Prof. Todd Austin, Exhibit F to "Brief in Support of Motion of Plaintiffs-Counterdefendants Nikish Software Corporation and Kishin Bharwani Under Fed. R. Civ. P. 56 for Summary Judgment of Defendant's Counterclaim," (Dkt. No. 117) ("Expert Report") at pp 15-17. Further, Nikish is seeking very little reimbursement from Manatron relating to the Michigan litigation. Bodman's time records reveal at least $80,485.03 invoiced to Nikish by Bodman during the time period for services provided December 2006 – December 2010 relating to the Michigan litigation and the Clinton County litigation (and other corporate matters). The limited reimbursement sought by Nikish relating to this litigation is the time

allocated to Nikish's ownership of intellectual property rights (including copyright) in Tax Claim software.

**Seventh**, the time spent reassuring Warwick County (an Indiana county that received Manatron's letter threatening "legal and operational gridlock") that Nikish software did not infringe the copyright in Manatron's software is directly relevant to Manatron's claim of copyright infringement. Indeed, Bodman's time entries reflect the direct relationship between the Warwick matter and Manatron's unsupported allegation: "Various tconf. Warwick County, Mr. Bharwani regarding impact of Manatron allegations of infringement on willingness to license RMS; prepare letter." *See* Time Entry for December 22, 2009 in Exhibit 1 to the Declaration of Susan M. Kornfield in Support of Nikish's Motion for Attorney's Fees. Manatron's assertion is genuinely so bizarre that it is difficult to respond except to restate the premise, to direct Manatron to Exhibit 2 to the Declaration of Susan M. Kornfield (in support of the Motion for Attorneys' Fees) where Ms. Kornfield analyzes the lack of merit in Manatron's copyright case, and to note that Manatron offers no evidence in support of its assertion regarding Warwick County. Manatron offers what it usually offers – assertions devoid of evidence.

**Eighth**, the Court should reject Manatron's argument that it did not engage in offensive litigation tactics. Manatron, a large sophisticated company, knows how to properly enforce its intellectual property rights: request a meeting with the alleged infringer and counsel, or send a cease and desist letter, or file a lawsuit. It chose, instead, a marketing campaign directly to every auditor in the State of Indiana. It called a *prosecutor's office* to ask them to look into alleged copying by Nikish. It complains that Nikish is seeking reimbursement for a motion it filed and won and also for the motions that Nikish filed and Manatron opposed when the substance of

those other motions was now shown to be meritorious and would have disposed of the dispute years ago.

**Ninth**, Manatron's assertion that it was forced into multiple depositions is truly absurd. Nikish scheduled no depositions relating to Manatron's counterclaims. Manatron – not Nikish – noticed and scheduled for the depositions of Mr. Wimpelberg, Mr. Norris, and Mrs. Norris. Even more, Manatron filed a supplemental motion with this Court, asking for time to take these depositions, and contending that the depositions were relevant to Manatron's counterclaims. These now famous deponents – the ones who did not work on Nikish's RMS Indiana software and who would not know source code if it bit them – had no relevant information at all. If Manatron did not want Nikish to incur fees associated with these depositions, it could have simply postponed or canceled them. Manatron brought these fees upon itself.

**Tenth**, Nikish is not seeking fees related to the unfair competition claims:

> The fees in this case reflect the complexity of an intellectual property dispute involving software; responding to 10 counterclaims (9 of which are the subject of this petition for attorneys' fees and expenses)… Declaration of Susan M. Kornfield at ¶ 10 (emphasis added).

Thus, Manatron's argument that Nikish cannot recover fees associated with the unfair competition claim is moot. Nikish will seek fees related to the unfair competition claim when it prevails on that claim.

Even so, Manatron's reliance on *Berkla v. Corel Corp.*, 302 F.3d 909, 924 (9th Cir. 2002), is misplaced. The *Berkla* court found that one party's behavior, while not violative of the Copyright Act, was still "highly questionable" and thus not entitled to an award of attorneys' fees. That is most certainly not the case here, as noted by this Court:

> Simply stated, the Court is not persuaded by Manatron's arguments. While some of the statements Manatron emphasizes may seem significant at first blush, their strength dissipates when viewed in context. After the dust settles, Manatron is left with a handful of stray, almost cryptic statements. Even when viewed cumulatively, these statements fail to create genuine issues of material fact as to infringement. Order at 13.

**Eleventh**, Nikish is entitled to its fees and costs associated with communicating with the Indiana counsel because its Complaint integrally relates to the copyright infringement claim, which Manatron admits by conceding that the counterclaim was compulsory. At bottom, the Complaint states "Nikish did not violate Manatron's intellectual property rights and any public communication to the contrary is false and harmful to Nikish." Manatron's counterclaim is "Yes you did." It is obvious that counsel handling the "my software does not infringe" must coordinate closely with counsel defending against "yes it does." The Complaint and the Counterclaim are obviously factually and legally intertwined. Manatron cannot justifiably separate the two claims, and thus the fees should not be separated.

**Twelfth**, this Court should reject Manatron's argument that the fees associated with the infringement analysis by the software expert agreed upon by the parties, and subject to an order of this Court, are not recoverable. Dr. Austin's analysis, as the Court knows, was central to this case. Without it, the parties would have to have retained their own experts, create their own expert reports and rebuttal reports, take depositions, and file opposing motions. The fees for that would have been four times the actual fees related to Dr. Austin's analysis.

Nikish's work surrounding Dr. Austin's analysis included a significant variety of time-consuming activities, all set forth in the time entries provided to the Court and to Manatron, including, but not limited to:

- Selecting a qualified expert with the appropriate background to which Manatron would agree;
- Negotiating a source code review plan with Manatron that governed the expert's analysis, including numerous communications between Nikish's and Manatron's counsel to resolve a variety of issues (*e.g.*, shifting of burden);
- Drafting of the instructions that would govern Dr. Austin's work;
- Formalizing this plan with the help of the magistrate judge, including multiple hearings on the matter;
- Implementing the plan, including, after receipt and review of Dr. Austin's work, negotiating which portions of his report were confidential and which would be disclosed on the record.

The overwhelming majority of these activities involved negotiations with Manatron's counsel, and thus the fees are proper. Further, some of the documents provided to Dr. Austin (*e.g.,* his instructions) were drafted entirely by Nikish's counsel, to the benefit of Manatron. The fact that Nikish provided this benefit to Manatron is not a basis to disallow the recovery of fees.

**Thirteenth**, Nikish has received invoices for legal services through December 2010. Supplemental Declaration of Susan M. Kornfield at ¶ 7. The December invoice totals $17,062.30.[5] *Id.* Thus, Manatron's argument that Nikish is seeking reimbursement for fees not billed is false.

**Fourteenth**, Nikish's request for attorney fees is timely. Nikish is claiming its fees only based on the nine counts that the Court dismissed upon its Motion for Summary Judgment. As Manatron admits, nothing in 17 U.S.C. § 505 or FRCP 54 prevents the Court from awarding attorney fees at this point in time. It is fully within the Court's power to do so as part of the

[5] Nikish has also incurred fees of approximately $7,434.38 in January, 2011 related to the Manatron matter. Supplemental Declaration of Susan M. Kornfield at ¶ 7 Most of the time has been required because of Manatron's "scorched earth" approach to the Motion for Attorneys' Fees – raising at least fourteen different reasons that the Court should not award attorneys' fees, mischaracterizing the legal standard, misstating the holdings in cases, asserting as "facts" statements about which it has no first hand knowledge, and the like, all of which require additional time from Bodman to respond. In addition, Bodman wrote-off approximately $300 in fees off its December, 2010 invoice to Nikish.

Court's substantial discretion to award fees. *HyperQuest, Inc. v. N'Site Solutions, Inc.*, -- F.3d --, 2011 WL 148803, *9 (7th Cir. January 19, 2011) (stating, "The Copyright Act gives the district court discretionary authority to grant attorneys' fees in favor of the prevailing party."). The case on which Manatron's relies, *Knowledgeaz, Inc. v. Jim Walters Resources, Inc.*, 2009 WL 425961, at *3 (S.D.Ind. Feb. 19, 2009) (unpublished case) states only that district courts "usually" or "generally" (but not always) wait until the issuance of a final order.

Here, Nikish is entitled to the funds and has waited over four years for reimbursement. This is a lot of money to anyone, and is, frankly, a "ton of money" to Nikish. Consider the following ratio: 8 (Nikish employees) to 400 (Manatron employees) is like $203,487.90 to $10,174,395.

Nikish respectfully suggests that the Court exercise its discretion in awarding attorneys' fees at this time.

## CONCLUSION

Nikish carefully and conscientiously reduced its attorneys' fees claim to only those which relate to the nine out of ten counterclaims that the Court dismissed upon Nikish's Motion for Summary Judgment. As the Court stated, it was "not persuaded by Manatron's arguments." Manatron admits that Nikish is entitled to at least $35,000 in fees. Of course, that would not even cover the basic fees associated with Dr. Austin's analysis, or the out-of-pocket expenses, let alone four years of Manatron's rejected allegations of copyright infringement. Under 17 U.S.C. § 505, the Court has full discretion to award attorneys' fees. Further, under controlling Seventh Circuit law, the presumption of attorneys' fees is "very strong" in cases like this one. This Court should grant Nikish's Motion for Attorneys' Fees and Expenses and award $203,487.90.

Respectfully submitted,

s/ Susan M. Kornfield
BODMAN PLC
201 South Division Street, Suite 400
Ann Arbor, MI 48104
(734) 930-2488
skornfield@bodmanlaw.com
(P41071)

January 28, 2011

Attorneys for Plaintiffs/Counter-defendants